754 So.2d 598 (2000)
Beverly Jean TAYLOR, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00371-COA.
Court of Appeals of Mississippi.
January 25, 2000.
*600 Brian H. Neely, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, LEE, AND PAYNE, JJ.
BRIDGES, J., for the Court:
¶ 1. Beverly Jean Taylor was charged under a five count indictment and convicted in the Circuit Court of Alcorn County on three counts of embezzlement of public funds. She was sentenced to three concurrent ten-year terms of imprisonment with seven years of each suspended and ordered to pay restitution in the amount of $5,625 plus court costs. Aggrieved by the judgment rendered against her in the lower court, Taylor has perfected an appeal to this Court. Seemingly leaving no stone unturned, Taylor runs the gambit, alleging error in every facet of the trial process. Her assignments of error are as follows
I. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO QUASH THE INDICTMENT BASED UPON THE THEORY OF MULTIPLICITY.
II. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO QUASH THE INDICTMENT BASED UPON THE THEORY OF DUPLICITY.
III. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO DISMISS BASED UPON DEFENDANT'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL.
IV. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO DETERMINE THE MAKE-UP OF THE GRAND JURY AND FOR ADDITIONAL TIME.
V. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION FOR AN INTERLOCUTORY APPEAL.
VI. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION FOR A CONTINUANCE.
VII. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO DISMISS *601 AND/OR FOR A MISTRIAL PURSUANT TO BATSON v. KENTUCKY.
VIII. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION TO DISMISS BASED UPON THE APPLICABLE STATUTE OF LIMITATIONS.
IX. THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING THE INTRODUCTION OF DOCUMENTARY EVIDENCE OVER THE OBJECTION OF DEFENSE COUNSEL.
X. THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING INTRODUCTION OF THE EXPERT OPINION OF BURT HANEY OVER OBJECTION OF DEFENSE COUNSEL.
XI. THE TRIAL COURT COMMITTED PLAIN ERROR IN DENYING DEFENSE COUNSEL'S MOTION FOR A NOT GUILTY VERDICT.
XII. THE TRIAL COURT COMMITTED PLAIN ERROR IN DENYING DEFENSE COUNSEL'S MOTION FOR A JNOV.
XIII. THE TRIAL COURT COMMITTED PLAIN ERROR IN DENYING DEFENSE COUNSEL'S MOTION FOR A NEW TRIAL.
XIV. THE TRIAL COURT COMMITTED PLAIN ERROR IN THE APPLICATION OF A SENTENCE IN VIOLATION OF THE EIGHTH AMENDMENT PROHIBITION AGAINST CRUEL AND UN-USUAL PUNISHMENT.
Finding each assignment of error without merit, we affirm.

FACTS
¶ 2. Taylor was hired by the City of Corinth on January 13, 1981, as secretary for then Mayor Edward Bishop. In July of 1994, working her way up through the city administration, Taylor was given the responsibilities of Deputy City Clerk in addition to her secretarial duties for the mayor's office. This new assignment required her to account for the payroll, oversee disbursement of city funds and supervise the City Court Clerk's fund among other collateral matters.
¶ 3. James R. Billingsley, the clerk for the City of Corinth since 1983, testified that in December 1994 he discovered that city funds were missing. The following January, the city contract auditors, Dobbins and Brawner, looked into the alleged discrepancy and confirmed that funds were, indeed, missing. On February 17, 1995, after a more detailed audit, the State Auditor's Office was notified of irregularities surrounding funds handled by Taylor for the clerk's office. In particular, Taylor's shared control over the "police court clerk clearing account" linked her to the missing city funds.
¶ 4. Regarding this fund, Billingsley explained that the account held money placed there by a defendant in a pending action until such time as the court disposes of the case. If the court found the defendant not guilty, the defendant's money was returned. If the court found the defendant guilty, the fine was forfeited to the city and placed in the municipal general fund. Depending upon the type of offense, a check was then written out of the municipal general fund to the State of Mississippi.
¶ 5. Billingsley described the typical process surrounding payment of a fine as a fairly simple procedure. Anyone owing a fine for speeding, DUI or other similar matters came to the police department and paid the fine in cash or by bond to a police dispatcher on duty. The dispatcher took the payment, wrote a receipt for the amount received and placed the money in *602 an envelope identified with the person's name and amount of money contained in the envelope. Periodically, the dispatcher brought the brown envelopes containing the money and the receipt book upstairs to a deputy city clerk, primarily Taylor, but other deputy city clerks accepted the envelopes and receipts on occasion. The deputy city clerk then counted the money contained in the envelope, checked it against the information on the envelope, checked it against the receipt book itself, prepared a deposit slip for the requisite amount and deposited the city funds in the bank.
¶ 6. In addition, a separate ledger book was kept in the city clerk's office. The deputy city clerk took the information from the brown envelopes and the receipt book, which had to be returned to the dispatcher's office as soon as possible to accommodate members of the public arriving to pay their fines, and made entries into the ledger book regarding the transactions before the bank deposit was made. The ledger recorded the name of the defendant, case number, receipt number and amount of money received from the person paying the fine. Furthermore, there was a "regular fine" book and a "state bond fee" book where fines paid or forfeited by a defendant and state bond fees the greater of twenty dollars or two percent of the fine were recorded, respectively.
¶ 7. Burt Haney handled the investigation of these suspicious circumstances for the State Auditor's Office. After speaking with the CPA firm responsible for the audit, Haney took all available records and began scheduling every receipt he could document that came through city hall by way of the police department. Haney noted seventeen instances where entire deposits of fine money failed to make it into the bank. In addition, twenty-six instances of deposits deficient in regard to the deposited amount and the corresponding receipts representing fines covered by the deposit were found. During the auditing process, Haney reviewed the police receipt books, city court clerk's ledger, deposit slips, bank statements and the remaining envelopes which had been used to transport the money. All but three of the envelopes used to transport the money during the period Haney audited were missing. Without the envelopes, Haney used the receipt books, as they were initialed by the receiving deputy clerk and the ledger book to reconstruct the trail the money took from the police dispatcher through the clerk's office into the bank. Haney found that the deficiencies were attributable to a time frame that coincided with Taylor's shared control over the fund. Further, Haney found that Taylor signed off on the receipt books for money received that never made it to the bank.
¶ 8. Taylor testified that without the brown envelopes sent up from the police dispatcher to reconcile against her entries in the deputy clerk's ledger, she would be unable to reconstruct the exact chain of custody of the funds in question. Evidence was presented at trial that all but three of the brown envelopes used to transport the funds from the police dispatcher to the clerk's office during the time in question were missing as well as some ledger entries. Taylor testified that initialing the receipt book as having received the amount of money listed on the receipts and envelopes did not, in fact, mean that she actually received that exact amount of money. She testified that she did not normally follow proper procedure by counting the funds and balancing them with the ledger upon signing for the funds because she was busy with other responsibilities, such as getting the payroll completed.
¶ 9. Regarding Counts II, III and IV of the indictment under which Taylor was convicted, Haney testified that a block of receipts and journal entries posted October 3, 1994, totaled $2,225; another block, posted on November 14, 1994, totaled $1, 325; and a third block totaling $2,075 was *603 posted on November 21, 1994.[1] All of these amounts were signed as received by Taylor and none were deposited into the city's bank account.

DISCUSSION
¶ 10. From a careful reading of appellant's brief, one can glean fourteen assignments of error. The issues listed in the table of contents in appellant's brief do not correspond accurately to the statement of the issues presented, nor to those issues argued in the body of the brief. Under the argued issues, appellant makes broad based, sweeping allegations under certain assignments of error. While it is her right to appeal whatever error she believes the trial court committed, we take this opportunity to remind all those who invoke the jurisdiction of this Court that briefs are filed to assist the Court. Dozier v. State, 247 Miss. 850, 851, 157 So.2d 798, 799 (1963). "In other words, the purpose is to aid the appellate court in determining what the law is." Dozier, 247 Miss. at 852, 157 So.2d at 799. It is therefore a necessity that attorneys plead with particularity by citing specific cases that support the proffered argument.
¶ 11. In crafting thirteen of the alleged errors, Taylor asserts plain error occurred at the trial level, thus requiring a different standard of review than this Court normally adopts. The Mississippi Supreme Court defined "plain error" as error that affects the substantive rights of a defendant. Grubb v. State, 584 So.2d 786, 789 (Miss. 1991). "The plain error doctrine has been construed to include anything that `seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Porter v. State, 749 So.2d 250, 260-61 (¶ 36) (Miss.Ct.App.1999) (quoting United States v. Olano, 507 U.S. 725, 732-35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Our analysis, therefore, necessarily includes a determination of whether there is an error that is some deviation from a legal rule, whether that error is plain, clear or obvious, and whether the error is prejudicial in its effect upon the outcome of the trial court proceedings. Porter, 749 So.2d at 260-61 (¶ 36). For the sake of brevity, we will group issues for analysis.
ANALYSIS OF LEGAL ISSUES
IV. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO DETERMINE THE MAKE-UP OF THE GRAND JURY AND FOR ADDITIONAL TIME.
V. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION FOR AN INTERLOCUTORY APPEAL.
VIII. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION TO DISMISS BASED UPON THE APPLICABLE STATUTE OF LIMITATIONS.
XI. THE TRIAL COURT COMMITTED PLAIN ERROR IN DENYING DEFENSE COUNSEL'S MOTION FOR A NOT GUILTY VERDICT.
XII. THE TRIAL COURT COMMITTED PLAIN ERROR IN DENYING DEFENSE COUNSEL'S MOTION FOR A JNOV.
¶ 12. Taylor fails to cite authority to support the above listed assertions of error. Failure to cite relevant authority obviates the appellate court's obligation to *604 review such issues. Williams v. State, 708 So.2d 1358, 1362-63) (Miss.1998); Grey v. Grey, 638 So.2d 488, 491 (Miss.1994); McClain v. State, 625 So.2d 774, 781 (Miss. 1993); Smith v. Dorsey, 599 So.2d 529, 532 (Miss.1992). Consequently, this Court is permitted to disregard these five issues Taylor raises on appeal. See Edlin v. State, 533 So.2d 403, 409-10 (Miss.1988) (holding that "[i]t is the duty of the appellant to overcome the presumption of the correctness of the trial court's judgment by demonstrating some reversible error"). We therefore proceed to the nine remaining issues before the Court.
I. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO QUASH THE INDICTMENT BASED UPON THE THEORY OF MULTIPLICITY.
II. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO QUASH THE INDICTMENT BASED UPON THE THEORY OF DUPLICITY.
¶ 13. Taylor alleges the indictment under which she was ultimately convicted incorrectly contained five separate counts of embezzlement which should have been combined into one count of embezzlement, thus constituting multiplicity. Taylor cites federal authority that, however persuasive, is non-binding on the Court under these circumstances. We instead look to Mississippi statutory authority and case law for guidance. Multiple count indictments are addressed by Miss.Code Ann. § 99-7-2 (Rev.1994).[2] The State charged Taylor with four distinct and separate counts of embezzlement in Counts IIV and one count of embezzlement that covered a time frame exclusive of the specific dates enumerated in Counts I-IV, but inclusive of the dates surrounding Counts IIIV. The above referenced statute allows offenses charged in one indictment to be listed as separate counts if the offenses are based on the same act or transaction or are a part of a common scheme or plan. "Embezzlement, when committed by a series of connected transactions from day to day, may be alleged as on a single day...." Davis v. State, 108 Miss. 710, 712, 67 So. 178, 180 (1915) (quoting Bishop's New Criminal Procedure § 398 (4th Ed.)). Taylor was convicted of embezzling money from the same fund, in the same manner, on separate occasions while serving as deputy city clerk over a specified period of time. Nothing in Davis obligates the prosecution to combine a series of acts into one count where there is proof that distinct amounts were taken on different dates.
¶ 14. "Duplicity in criminal pleading is the joinder of two or more distinct and *605 separate offenses in the same count of an indictment or information." Hitt v. State, 217 Miss. 61, 67, 63 So.2d 665, 668 (1953) (quoting Am.Jur. Indictments and Information § 124). "The settled rule in this state is that it is bad practice to join in the same indictment counts for distinct felonies of differing degrees, differently punished, and that, if that be done, the court may, in its discretion, on timely and proper objection, quash the indictment." State v. Rees, 76 Miss. 435, 22 So. 829, 829 (1897). The felonies charged in the five count indictment concerning Taylor are not different as to degree or punishment and the lower court had discretion to allow the case to proceed under that indictment. In the case sub judice, there is no overlap of dates among the separate counts as Count V was specifically drawn to avoid this contention. We find no merit to either assertion of error concerning multiplicity or duplicity.

III. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO DISMISS BASED UPON DEFENDANT'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL.
¶ 15. The Mississippi Supreme Court recently outlined the basis for a challenge of a conviction based upon a violation of a defendant's right to a speedy trial in Watts v. State, explaining that
[t]he right to a speedy trial is guaranteed by the sixth and fourteenth amendments to the United States Constitution and art. 3, § 26 of the Mississippi Constitution of 1890. "The constitutional right to a speedy trial attaches at the time a person is effectively accused of a crime." Skaggs v. State, 676 So.2d 897, 900 (Miss.1996); Noe v. State, 616 So.2d 298, 300 (Miss.1993). An alleged violation of that right is subject to scrutiny under the four-prong analysis set out by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Barker factors include 1) the length of the delay, 2) the reason for delay, 3) the defendant's assertion of his right to a speedy trial and 4) prejudice to the defendant by the delay. Id. at 530, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. No single factor is dispositive. Skaggs, 676 So.2d at 900. Rather, this Court looks at the totality of the circumstances in determining whether a defendant's rights have been violated. Herring v. State, 691 So.2d 948, 955 (Miss.1997).
Watts v. State, 733 So.2d 214, 235 (Miss. 1999).
¶ 16. "Prejudice will be presumed when the delay from arrest until trial is at least eight months." Rhyne v. State, 741 So.2d 1049, 1052 (Miss.Ct.App. 1999). Looking at Taylor's assertion of error, we apply the Barker factors. This Court is careful to note that when evaluating these factors, no mathematical formula exists according to which the Barker weighing and balancing process must be performed. Snow v. State, 735 So.2d 1094, 1098 (Miss. Ct.App.1999). The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of nonpersuasion. Snow, 735 So.2d at 1098. The balancing process is not restricted to the Barker factors as other relevant circumstances may be considered. Id. at 1098.
¶ 17. The first factor to be considered is the length of the delay. The record reflects that from the date of Taylor's arrest until the date of trial 471 days elapsed. Since no single factor is dispositive, we look to the reason(s) for the delay in getting this case to trial. The record offers some insight on this matter. Taylor was arrested on October 23, 1996, and arraigned on December 16, 1996. During her arraignment, Taylor made a motion for a continuance until the next term of court, set to begin in March of 1997. A joint motion for a continuance was filed at the beginning of the March 1997 court term postponing the trial until the July term of *606 the court. During the July term, the lower court filed a bump order, due to clogged dockets, further holding the trial over until the November term of 1997. A second bump order was entered over objection from the State, moving the trial to February 9, 1998. Of the 471 day period of delay, all but 54 days would be excluded under the second prong of the Barker factors because Taylor either joined or initiated continuances moving the trial date further down the court docket. When the opportunity arose to object together with the State to the second court ordered bump, Taylor remained silent. Actions attributable to a defendant that add to the delay in reaching trial are not weighed against the State in regard to the constitutional speedy trial clock. Snow, 735 So.2d at 1098.
¶ 18. The third Barker factor concerns whether or not the defendant asserted the right to a speedy trial. Two separate indictments are involved in this case; the original, numbered 96-267, and the second indictment under which Taylor was convicted, numbered 97-205. Under 96-267, Taylor blithely agreed to, if not initiated several continuances, thereby waiving this argument. In any event, 96-267 was nolle prossed in lieu of 97-205, which was entered in December of 1997. Taylor turned herself in on December 12, 1997, and trial on that indictment was held in February of 1998, a reasonable delay in time, thus not satisfying the first prong of the Barker factors.
¶ 19. Taylor suffered no prejudice worthy of discussion under the fourth Barker factor. In fact, Taylor's next allegation of error provides the Court with the perfect segue to illustrate this point. Taylor next asserts that she needed more time to prepare before the trial commenced.

VI. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION FOR A CONTINUANCE.
¶ 20. Taylor next asserts the trial court erred in denying her motion for a continuance on the grounds that she had insufficient time to prepare a proper defense. Taylor fails to cite a page in the voluminous record where this denial occurred. After careful research, this Court is unable to locate either a written or an ore tenus motion on this point. The only evidence in the transcript resembling such a motion is found in the exchange quoted below:
THE COURT: Very well. Is the State ready to go to trial Monday?
MR. BULLARD: We are, your Honor.
THE COURT: Is the defendant ready?
MR. NEELY: No, your Honor.
THE COURT: You asked for a speedy trial.
MR. NEELY: I understand, your Honor. We asked for a speedy trial up to today's date. We need to see the things that have been ordered by the Court, sir, such as the book, the indictment book, we need to review that and when we review that and see what we have and then we can make a better determination. We just want to make sure we've done everything we're supposed to do.
THE COURT: That should be afforded to you before you leave this afternoon.
MR. NEELY: I understand, your Honor.
¶ 21. It is fundamental that the trial court will not be reversed for failing to grant relief that was not requested. Chase v. State, 645 So.2d 829, 846 (Miss. 1994); Crenshaw v. State, 520 So.2d 131, 134 (Miss.1988). Accordingly, Taylor's sixth proposition is without merit.

VII. THE TRIAL COURT COMMITTED PLAIN ERROR BY OVERRULING DEFENSE COUNSEL'S MOTION TO DISMISS AND/OR FOR A MISTRIAL PURSUANT TO BATSON v. KENTUCKY.

¶ 22. Taylor's next argument rests upon the trial court's alleged error in overruling defendant's motion to strike the *607 jury panel on the basis of a Batson challenge. Taylor argues that due to the exclusion of the two African-Americans on the panel, her constitutional right to be tried by a jury of her peers has been violated. Batson requires a defendant, in order to make out a prima facie case of purposeful discrimination in the selection of a petit jury, to establish (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Once this prima facie showing has been made, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Sudduth v. State, 562 So.2d 67, 71 (Miss.1990). A prima facie case was never made. Nevertheless, the State provided the trial court with neutral explanations for the challenges. The record revealed that one potential African-American juror was excluded due to a pending criminal indictment and the other was excluded because she was Taylor's next door neighbor. Clearly, these reasons can be categorized as neutral explanations.
¶ 23. Taylor argues that it is untenable that she be tried by a jury without having a member of her own race on the jury. This cornerstone of Taylor's proposition rests upon a shaky foundation. "The mere fact that a jury is white does not violate Batson; rather it is the racially discriminatory exercise of peremptory challenges to strike black jurors from the jury that violates the Batson rule." Sudduth, 562 So.2d at 71. The Batson decision recognized that it would be impossible to require proportional representation on a petit jury in view of the heterogeneous nature of our society. Batson, 476 U.S. at 85, n. 6, 106 S.Ct. 1712. Hence, Taylor's assertion fails as her supporting argument clearly contradicts authoritative case law.

IX. THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING THE INTRODUCTION OF DOCUMENTARY EVIDENCE OVER THE OBJECTION OF DEFENSE COUNSEL.
¶ 24. Taylor continues her trend of submitting categorical allegations of error at the trial level to this Court without offering any citation to the record in her brief where one might pinpoint evidence of these errors. Taylor contends that the trial court violated the "rule of completeness" by allowing documentary evidence into the record. The trial court's rulings on such matters are presumed to be correct and the appellant has the burden to show a reversible error arose from the ruling. Dillon v. State, 641 So.2d 1223, 1226 (Miss.1994). After reviewing the record ourselves, we agree with the State that the only language closely resembling such an objection is as follows:
MR. NEELY: Your Honor, we have an objection. We believe this is extremely misleading to the jury due to the fact, sir, again, that's why we were objecting on the context of these particular documents. Sir, we're going through volumes and volumes of documents that have all kinds of people's signatures on them. The only people that we're singling out on these are Beverly Jean Taylor. We believe that the jury should be able to see as a whole these documents and look at them and see so that they may see Mrs. Taylor may be one signature out of five or one signature out of ten. Just to highlight a particular document, sir, and jump 15 or 16 more down the line and to pick Mrs. Taylor's signature out is very misleading to the jury and we would object, sir.
THE COURT: All right, sir. This exhibit contains all of the receipts. They are in numerical order. They show whose initials are on them. *608 They will be able to review all of this exhibit in its entirety and you will get to cross-examine them. Overruled. Proceed.
¶ 25. On cross-examination of the witness, counsel for Taylor took full advantage of the opportunity to present discrepancies to the jury and introduce other documents not pointed out by the State as having come from employees other than Taylor. The State then clarified that any missing documents, like the now infamous brown envelopes, should be ignored because the information contained on those envelopes could be extracted from other documents like the ledger books and receipts. All of the documents available to the court were submitted to the jury for their consideration in the matter. As the State aptly argued, the rule of completeness is not tantamount to a rule of duplication.
¶ 26. Taylor also alleges that it is clear that the evidence relied upon to convict her was tampered with since some of the brown envelopes were missing. This allegation is absolutely groundless as there is not one scintilla of evidence offered as proof in support of this argument, and it is therefore dismissed summarily along with her ninth allegation of error.

X. THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING INTRODUCTION OF THE EXPERT OPINION OF BURT HANEY OVER OBJECTION OF DEFENSE COUNSEL.
¶ 27. Again this Court is left to ponder where, specifically, this error occurred in the trial record. In his brief, counsel for Taylor does not see fit to indulge the reader with any clue as to the location of the alleged error save that it occurred within the sixty pages of transcribed direct testimony of Burt Haney. It must be assumed that Taylor is trying to ground her allegation of error in the following exchange:
MR. BULLARD: Who took the $43,000?
MR. NEELY: We would object.
THE COURT: Objection will be sustained.
MR. BULLARD: From all of your indications from your research using the police receipt books, the bank deposits, the city ledgers, to who does everything point to having taken the $43,000?
MR. NEELY: Same objection.
THE COURT: I'm going to let the jury decide that ultimate issue. Objection will be sustained.
* * *
MR. NEELY: Your Honor, we would like to have all of the testimony of Mr. Haney stricken and all exhibits which have been presented on his behalf stricken on the basis of failure to properly qualify Mr. Haney as an expert and failure to lay the proper predicate. There has been absolutely no foundation laid for his opinions or statements at all....
THE: COURT: Very well. The witness has been testifying to facts. I do not recall that he has expressed an opinion. In fact, I sustained your objection as to the question dealing with his opinion as to who took the money. Your objection will be noted. It will be overruled.
¶ 28. "Ordinarily, error in the asking of an improper question is cured by not permitting it to be answered." Brady v. State, 722 So.2d 151, 158 (Miss.Ct.App. 1998). The trial court properly sustained the objection to the opinion testimony of Haney in the above quoted instance, and the trial judge addressed Taylor's characterization of Haney's overall testimony as opinion based rather than factual. He disagreed and ruled accordingly. Since Taylor offers the Court no further guidance as to where the alleged error occurred, we find Taylor's claim meritless.

*609 XIII. THE TRIAL COURT COMMITTED PLAIN ERROR IN DENYING DEFENSE COUNSEL'S MOTION FOR A NEW TRIAL.
¶ 29. Taylor chose to cite Idaho law to support this allegation of error. Mississippi, of course, has ample case law on point regarding the standard employed in reviewing a motion for a new trial. We will therefore look to precedent set by the appellate courts in Mississippi for guidance.
¶ 30. "In considering a motion for a new trial, the trial judge in exercising his sound discretion may grant the motion thereby overruling the jury's verdict only where such a verdict is against the overwhelming weight of the evidence or is contrary to the law." Pruitt v. Mississippi Farm Bureau Cas. Ins. Co., 724 So.2d 473, 475 (Miss. App.1998) (quoting Junior Food Stores, Inc. v. Rice, 671 So.2d 67, 76 (Miss.1996)). Taylor argues that there was no credible evidence presented at trial that would support a conviction. "Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." Fisher v. State, 481 So.2d 203, 212 (Miss. 1985). In fact, the record reflects that substantial evidence was presented at trial through both witness testimony and documents introduced on behalf of the State. The trial judge correctly overruled Taylor's motion for a new trial.

XIV. THE TRIAL COURT COMMITTED PLAIN ERROR IN THE APPLICATION OF A SENTENCE IN VIOLATION OF THE EIGHTH AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT.
¶ 31. The record reflects that Taylor did not present this issue to the trial court during the sentencing hearing or in a post-trial motion. Therefore, Taylor is procedurally barred from asserting it on appeal. Reed v. State, 536 So.2d 1336, 1339 (Miss.1988).
¶ 32. Procedural bar notwithstanding, The supreme court has stated that "[s]entencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Hoops v. State, 681 So.2d 521, 537 (Miss.1996). Taylor was convicted on three counts of the indictment, each count carrying separately a maximum of twenty years in prison. Facing the possibility of sixty years in prison, Taylor presented testimony on her behalf at a sentencing hearing. After careful consideration, the trial judge chose to impose a ten year sentence for each count, to run concurrently, and further suspended seven of those ten, leaving Taylor with three years to serve in prison. In addition, Taylor was ordered to pay restitution and court costs. This sentence is clearly within the mandates of the statute and accordingly is proper and well within the discretion of the trial court.

CONCLUSION
¶ 33. This Court would like a final opportunity to reiterate that briefs are filed in order to provide a concise statement of the case, supported by specific case law, with reference given to where particular errors occur in the trial record. Those submitting blanket allegations in the hope that the Court will pour through the record until we find reversible error will be sorely disappointed. As for supporting authority, citing entire sections of the Mississippi Digest or complete chapters of ALR as references without citing particular cases contained therein does nothing to clarify the issues before the Court and will not be tolerated, much less condoned. After careful review of Taylor's fourteen assignments of error, we find no reversible error and the judgement of the trial court is, therefore, Affirmed.
¶ 34. THE JUDGEMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OF CONVICTION ON COUNTS II, III, AND IV OF EMBEZZLEMENT AND SENTENCES OF TEN YEARS *610 ON EACH COUNT, WITH SENTENCES TO RUN CONCURRENTLY, WITH SEVEN YEARS SUSPENDED ON EACH COUNT, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY RESTITUTION IN THE AMOUNT OF $5,625.00 AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
DIAZ, LEE, MOORE, AND PAYNE, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY MCMILLIN, C.J., IRVING, AND THOMAS, JJ.
SOUTHWICK, P.J., concurring.
¶ 35. With respect for the views of the majority and with a request for forbearance in my writing separately, I disagree with the reasoning on some of the issues. Nonetheless, I agree that we are shown no reversible error and should affirm.
¶ 36. Plain error. A minor point concerns Taylor's repetitive use of the phrase "plain error." When used as a term-of-art, this phrase refers to certain otherwise waived errors. Taylor's use of the phrase seems nothing more than for emphasis. "Clear error" might have been a better way to phrase it. Almost all the allegations that he makes are said to reflect "plain error" by the trial court, but also almost all of them were the basis of objections at trial. Plain error analysis is unnecessary.
¶ 37. Case authorities. A more important disagreement with the majority concerns the level of citation to authorities that is necessary before we will consider an issue. I certainly agree that a bare statement of error, unsupported by reference to case law, statute, or court rule, makes too great a demand upon an appellate court. In rare situations, when the argument has been called "novel" and therefore likely to take a court where no court has gone before, the supreme court has considered issues for which no reference to authorities is made. Kelly v. State, 553 So.2d 517, 521 (Miss.1989). Some appellants are simply the first to discover an argument, and it should not be rejected for its originality. I acknowledge the arguments here are not of that nature.
¶ 38. What we face are several issues that are supported by citations to statutes and court rules and not to case law. I do not agree that an argument merely based on a statute or rule is not supported and can be ignored. Depending on the issue, these may be the best authorities of all. If a statute of limitation for the cause of action is two years, a case citation that quotes the statute as providing for a two year limitation period adds nothing to our understanding. Case citations are not an end unto themselves. Sometimes they are unnecessary to the logic and force of an argument.
¶ 39. The first discovered reference to the rule being used was by Justice V.A. Griffith. The court was given general statements of error that were "not manifest or self-evident, and yet not a single authority is cited in appellant's brief, nor is there any definite statement of any particular principle of law which appellant would have us apply." Johnson v. State, 122 So. 529, 154 Miss. 512 (1929), (cited in Dozier v. State, 247 Miss. 850, 850, 157 So.2d 798, 798 (1963)). Corpus Jurisprudence was quoted that to the extent "possible, the reasons assigned should be supported by the citation of authorities or they will not be considered, unless it is clearly apparent that they are well taken." Johnson, 154 Miss. at 513, 122 So. at 529. "`It is seldom sufficient to state naked legal propositions, for propositions are by no means always self-evident,' Elliott, App. Proc. pp. 375, 376; and when not self-evident the party who advances them and cites no authority to support them may justly be said to have failed to maintain them." Johnson, 154 Miss. at 513, 122 So. at 529.
*611 ¶ 40. What I find to be the guiding principle here, one that is not necessarily rejected by the majority but certainly is hidden, is that citations to relevant legal authorities are necessary except for "self-evident" propositions:
It is a strange case upon which, in these days of tens of thousands of law books, no authority can be found, and when none is presented and the proposition is not manifestly well taken, there is the practical presumption that the authorities do not sustain the proposition, else they would have been cited. The courts frequently speak of such unsupported propositions as having been waived because of the failure to properly present them. There are several reasons which make it necessary to give weight to the foregoing considerations, one of which is that no Supreme Court could ever keep up with its docket if the judges were put to the tasks of briefing those cases of which the parties themselves have thought too little to brief.
Id. Moreover, I see no reason to conclude that the relevant legal authorities for arguments that are not self-evident must always be case citations. Those precedents may be nothing more than restating what is in fact the actual controlling authority, a statute or other rule.
¶ 41. The following are the issues that are considered waived by the majority under this citation doctrine. The authority for the fourth issue concerning the composition of the grand jury appears to be a reference to West Publishing Company "Key Numbers." Even if those are the correct sections of the Mississippi Digest, I find this to be nothing more than an invitation for us to research the question, a question which would not need to be answered anyway since the evidentiary basis for it is speculation as to the racial makeup of the grand jury.
¶ 42. The authority for the fifth issue dealing with interlocutory appeals is a quote of Appellate Rule 5. If in fact the terms of the rule clearly applied to the situation at hand, I find that solely referring to the rule more than adequate, even admirable for its simplicity. However, this is not an obvious violation of the rule. Even if the rule were to be applied to criminal cases, the rule does not appear to have been violated. I would respond to the authority cited, i.e., the rule itself, and conclude that no error occurred.
¶ 43. The next issue that is considered waived is an argument that the two-year statute of limitations applicable to this case was not followed. That is straight-forward. The statute is cited and quoted. Miss.Code Ann. § 99-1-5 (Rev.1994). This is an embezzlement case, and if the quoting of the statute proved to us that the statute of limitation applicable to embezzlement barred this prosecution, then we should consider the issue regardless of case citations. In other words, we do not need a precedent to conclude that the statute means what it says. Like the argument as to Appellate Rule 5, this issue is resolved by the plain language of the authority quoted. The statute states that the two-year limitation period does not apply to embezzlement. Id. I would not dismiss the issue because Taylor has cited no case authority, but rule on the issue since the authority cited demonstrates that no error occurred.
¶ 44. The next two barred issues are that there was insufficient evidence to support the conviction. That is a factual question. I suppose that the appellant could have cited some precedents that refer to the standard of review for sufficiency of evidence, but I find that to be one of the self-evident propositions for which no authority is needed. Whether evidence is insufficient requires a factual evaluation of the record, measuring what is discovered against the elements of the offense. Taylor set out in her statement of the facts what the evidentiary shortcomings were alleged to be. Case authority adds nothing unless a specific legal question existed as to the significance of certain facts. I find the issue properly raised, but I reject *612 it on the merits because the evidence supported conviction.
¶ 45. The purpose of the "no authority" rule is that we should not have to do a litigant's research. For some allegations that are factual or self-evident, no authority at all may be required. When the authority cited is something other than a judicial precedent, I would not reject it for that reason alone. Court opinions are not the only or even the initial source of most law.
¶ 46. Multiplicity and duplicity. Counts I-IV charged embezzlement on four specific dates. Count V charged embezzlement over a seventeen month period, but specifically excepted the dates of Counts I-IV. Taylor argues that these charges were multiplicitous and duplicitous. Multiplicity is the "practice of charging the commission of a single offense in several counts. This practice is prohibited because single wrongful act cannot furnish basis for more than one criminal prosecution." BLACK'S LAW DICTIONARY 1016 (6th ed.1990). Duplicity "prohibits the simultaneous charging of several distinct, unrelated crimes in one indictment." Id. at 503.
¶ 47. A statute cited by the majority appears to me to control as to duplicity, not multiplicity. Miss.Code Ann. § 99-7-2 (Rev.1994). A multi-count indictment, which is allowed by this statute if the offenses meet the stated requirements, is actually a duplicity problem. After this statute, some duplicity (as the term is intended here) is permitted. The statute was passed in 1986 and changed the existing law. Blanks v. State, 542 So.2d 222, 225 (Miss.1989); see Dixon v. State, 465 So.2d 1092, 1096 (1985). The statute permits different offenses to be charged in one indictment if they are sufficiently connected. The counts of this indictment all charge embezzlement committed by the same person from the same victim over a continuous period of time. I find no duplicity defect.
¶ 48. Multiplicity on the other hand is never allowed. Again, that is dividing one crime into several separate ones in order to get multiple convictions and sentences. Multiplicity doctrine prevents the act of robbing a store clerk of 50 one dollar bills out of the cash register from being made into a 50-count indictment, one for each bill.
¶ 49. We are asked to decide if this is a single seventeen month long embezzlement. If so, then it is multiplicitous to cause five counts to be drawn up about it. As the majority discusses, the State may charge a long-running embezzlement as occurring on one day, and proving that it occurred over a much longer time period will nonetheless support that conviction. Davis v. State, 108 Miss. 710, 67 So. 178, 180 (1915). The counts on which Taylor was convicted were for embezzlement on three separate dates: October 3, November 14, and November 21, 1994. The problem that Taylor properly highlights is that since Davis holds that conviction of an embezzlement that is charged as occurring on a certain day may be supported by proof of funds taken over a several day period, there is a potential overlap of these offenses.
¶ 50. My first reaction is that even though the State may rely on such evidence, here the evidence to support the convictions on these three counts did in fact focus on money taken on those three days. There was evidence that a specific dollar amount of receipts was posted on each of those dates and other evidence that this money was not ultimately received by the City. Each of those offenses was self-contained and had concluded. I find no overlap of the facts used to prove the three charges.
¶ 51. Secondly, I agree that there could have been a problem if Taylor had been convicted of Counts I-IV that allege specific days of embezzlement, and also convicted of Count V. That last count is problematic since it only excluded the four specific days mentioned in Counts I-IV. *613 Davis says that conviction for offenses charged as occurring on those four days could be sustained by proof of money taken on other days as well. This example may clarify the issue. A conviction on Count I which charges embezzlement on August 5, 1993, could be sustained by proof of embezzlement the week before and the week after. So excluding only August 5 from Count V may not be enough. As already pointed out, the proof on the three counts for which a guilty verdict was delivered did limit itself to the dates in question.
¶ 52. Even if there is a potential multiplicity problem in having a "catch-all" such as Count V, the issue is moot. Taylor was acquitted of Count V.
¶ 53. I agree with the affirming of this conviction. With respect for the majority, this separate opinion better represents my reasons for doing so.
McMILLIN, C.J., IRVING AND THOMAS, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] The grand jury indicted Taylor on five counts of embezzlement. The amounts and dates of each count in the indictment are as follows: Count I$1,430 on or about August 5, 1993; Count II$2, 225 on or about October 3, 1994; Count III$1,325 on or about November 14, 1994; Count IV$2,075 on or about November 21, 1994; Count V$36,151 between August 19, 1993 and January 29, 1995, excluding October 3, 1994, November 14, 1994, and November 21, 1994.
[2] The statute reads as follows:

When two or more offenses may be charged in a single indictment; trial, verdicts and sentences:
1. Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
2. Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.
3. When a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction.
4. The jury or the court, in cases in which the jury is waived, shall return a separate verdict for each count of an indictment drawn under subsection (1) of this section.
5. Nothing contained in this section shall be construed to prohibit the court from exercising its statutory authority to suspend either the imposition or execution of any sentence or sentences imposed hereunder, nor to prohibit the court from exercising its discretion to impose such sentences to run either concurrently with or consecutively to each other or any other sentence or sentences previously imposed upon the defendant.