638 So.2d 488 (1994)
Roberta Christine GREY
v.
Clifford Eugene GREY.
No. 92-CA-01062.
Supreme Court of Mississippi.
June 9, 1994.
Jerry K. Baldwin, L.C. James & Associates, Jackson, Terri D. Regan, Jackson, William B. Pemberton, II, Jackson, for appellant.
J. Mack Varner, Varner Parker Sessums & Akin, Vicksburg, Kay S. Beene, Vicksburg, for appellee.
*489 Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
The Appellant, Roberta Christine Grey, filed for divorce and sought various items of specific relief ranging from child support and alimony to property division. The chancellor granted her divorce and most of the specific relief requested, along with interests in some real and personal property which Roberta did not specifically request. Dissatisfied with the division of marital assets, Roberta has appealed to this Court, seeking review of the following issues:
A. Whether the chancellor erred in finding that Roberta Grey failed to meet the burden of proof required to establish the existence of a substantial asset and source of funds controlled by Clifford Grey;
B. Whether the chancellor erred in dividing the marital assets of the parties related to Grey Amusement Company;
C. Whether the chancellor erred in dividing the non-business marital assets of the parties;
D. Whether the chancellor erred in interpreting Miss. Code Ann. § 97-33-7(2) as a bar to ownership of video poker machines; and
E. Whether the chancellor erred in expanding, from "possession only" to "exclusive use and possession," the rights of Clifford Grey in and to the marital domicile located near Highway 61.

II. THE FACTS
Roberta and Clifford Grey were married from August 1964 until August 1991. During the first eighteen years of this twenty-seven year marriage, no assets were accumulated by the parties other than the couple's home at 159 Beverly Drive, Vicksburg. Roberta values the Beverly Drive home at between $45,000.00 and $55,000.00; Clifford values this home at $45,000.00. No savings account or substantial checking account was established because Clifford did not trust banks. The parties offered testimony regarding the assets they accumulated from 1982 forward: a home located at the Highway 61 Bypass for $75,000.00[1], to which $8,200.00 (according to Clifford) or $30,000.00 (according to Roberta) of improvements had been made, now valued at $100,000.00 by Clifford and at $150,000.00 by Roberta; real estate in Delhi, Louisiana, for $6,400.00, now valued at $3,000.00 by Clifford and $10,000.00 by Roberta; 122 acres of farm land in Yazoo County for $64,000.00, which Roberta now values at $75,000.00 and Clifford now values at $60,000.00[2]; 1983 GMC truck now valued at $2,200.00 by Roberta and Clifford; a lowboy for $5,200 or 5,500.00, now valued at $3,500.00 by Clifford; 1986 Volvo for $8,000.00 now valued at $3,000.00 by Roberta and at $6,000.00 by Clifford; a backhoe for $13,000.00, now valued by Clifford at $8,500.00[3]; 1972 Ford tractor and implements which Clifford claimed cost $6,200.00 but Roberta claimed cost over $8,000.00, valued at $15,000.00 by Roberta and at $5,500.00 by Clifford; 1991 Dodge pickup truck for $18,000.00 now with a Blue Book value of $15,000.00[4]; Honda lawn mower for $750.00; and a weedeater for $450.00. All real property is titled jointly.
In addition to these assets, Roberta claimed that she and Clifford buried $250,000.00 at their Highway 61 home. The parties' older daughter, Christy, corroborated Roberta's testimony regarding burial of money. Christy said she witnessed Clifford prepare the money for burial and stated that Clifford told her he buried money. Christy also testified that she and her father were estranged at the time of trial and had been for months. The parties' minor daughter *490 also provided corroborative testimony, claiming she witnessed Clifford pick the burial spots and stating that Clifford told her he had buried about $250,000.00. This minor daughter also said she saw Clifford take money from the safe in his shop, put it in coffee cans, and wrap it in newspapers in preparation for burial. Clifford responded only that he had previously joked about burying money, but had not actually done so.
In 1982, Clifford and Roberta began the business of Grey Amusement Company as a partnership, according to Roberta, although her name is not on the Company's 1989 or 1990 income tax returns as proprietor. However, Roberta's name is on the 1982 through 1986 tax returns as the proprietor of the business. The Company placed video amusement machines, jukeboxes, and pool tables in various locations and split the profits with the property owner, fifty-fifty. The income and expenses related to this partnership are reflected on their federal income tax returns. Income tax returns for eight of the first ten years of operation of Grey Amusement were offered (1982-86 and 1989-91), reflecting cash outlays for business equipment and property of $165,155.00. For the same eight year period, Grey Amusement's gross income is reflected as $277,585.00. Roberta estimated the value of Grey Amusement at $150,000.00 while Clifford estimated $10,000.00  $25,000.00. Roberta handled the family finances and was responsible for bringing the business information to the accountant for tax preparation. Roberta was unaware of how many or which locations Clifford had at the time of the divorce or how many machines he owned. Clifford testified that he had five pool tables in storage, most in need of recovering, three usable juke boxes, also in storage, and nineteen video games, fourteen in use at various locations and 5 in storage. Clifford valued these machines as follows: $800.00 for each pool table, $800.00 to $1,200.00 per juke box, and $800.00 to $900.00 per video machine. The equipment in use was currently at six locations, other than the Onward location. At Onward, there was a jukebox and eight video machines.
Clifford said that many of the machines located in his shop or on the Yazoo County property in a dilapidated house were no good. Roberta admitted that she had not had much to do with the business for at least the year and a half before trial and perhaps for six or eight years before the trial. Clifford testified that Roberta handled the bookkeeping for Grey Amusement Company. However, when she moved out in November of 1991, she began collecting the money and taking care of the Onward location at Clifford's prompting. This location has five video game machines, one video poker machine, no pool table, and a juke box. Roberta estimated she had made $4,500.00 from November 1991 until May 1992. Clifford claimed this location generated a greater income than reported by Roberta. Clifford claimed his other six locations generated about $2,300.00 a month.
The parties' son, also named Clifford, had helped Roberta maintain and service the Grey Amusement Company's machines during 1984 and 1985 while his father was in Parchman. He testified that no books or records were kept in the ordinary course of business and the average monthly income from the Company's six or seven locations at that time was between $5,000.00 and $6,000.00.
Roberta reported her only source of income was $400.00 a month derived from her seamstress business. The couple had rented their first home for most of the last eight years of the marriage, when they lived in the Highway 61 home. The rental income was $350.00 a month. When the parties separated, Roberta and the minor child moved to the house on Beverly Drive, taking with them most of the furnishings from the Highway 61 house and all of the yard equipment, including the lawn mower and weedeater. Roberta and Clifford were satisfied with the division of furnishings. In July or August of 1991, shortly before the separation, Clifford sold a bulldozer for $16,000.00. He took $6,000,00 of the proceeds and put it toward his Dodge pickup truck. The other $10,000.00 went to Roberta. Roberta made various contributions to the marriage and family unit and helped out in the Amusement Company business. Roberta estimated the monthly living expenses for her and the minor child to be *491 $2,370.50. Clifford estimated his monthly living expenses to be approximately $1,800.00.
In conjunction with her suit for divorce, Roberta requested: custody of the parties' minor child and child support; lump sum and periodic alimony; exclusive use and possession of one of the parties' two residences and of 120 acres of farm land in Yazoo County; exclusive use and possession of the household furnishings and a 1986 Volvo; medical, dental, orthodontic, ophthalmological and hospitalization insurance for the minor child and payment of all such expenses not covered by said insurance; that Clifford be required to maintain a policy of insurance on his life in the amount of at least $10,000.00 for the benefit of the minor child; and attorney fees and costs.
The chancellor granted Roberta's divorce and awarded her custody of the minor child and child support in the amount of $400.00 monthly. The chancellor found that Roberta's allegations that Clifford had buried $250,000.00 were not proved. Roberta was also awarded the following: exclusive use and possession of the residence which she had requested, located at Beverly Drive, Vicksburg; a one-half interest in the real property located in Delhi, Louisiana, and in the real property located in Yazoo County, Mississippi; title, use, and possession of the 1986 Volvo; all equipment located at the Grey Amusement Company Onward location; periodic alimony in the amount of $350.00 a month; permanent possession of all furniture and appliances in her possession; and attorney fees of $1,000.00. Clifford was ordered to maintain a policy of life insurance on himself, in the amount of $10,000.00, for the benefit of the minor child. Each party was further ordered to pay one-half of any and all medical and dental expenses incurred by the minor child. Clifford was awarded the residence at Highway 61 Bypass; one-half interest in the real property located in Delhi, Louisiana and in the real property located in Yazoo County, Mississippi; title, use, and possession of the 1991 Dodge pickup truck, the backhoe, Ford tractor, the lowboy, and the 1983 GMC truck and any attendant debt; all Grey Amusement Company equipment located at any locations other than Onward; and furniture and appliances in his possession.

III. LAW AND ANALYSIS

A. Whether the chancellor erred in finding that Roberta Grey failed to meet the burden of proof required to establish the existence of a substantial asset and source of funds controlled by Clifford Grey.

B. Whether the chancellor erred in dividing the marital assets of the parties related to Grey Amusement Company.

C. Whether the chancellor erred in dividing the non-business marital assets of the parties.
Roberta's failure to cite any authority in support of the first three assignments of error precludes this Court from considering these issues on appeal. Matter of Estate of Mason v. Fort, 616 So.2d 322, 327 (Miss. 1993), citing R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990); Kelly v. State, 553 So.2d 517, 521 (Miss. 1989), citing Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989), Shive v. State, 507 So.2d 898 (Miss. 1987), and Pate v. State, 419 So.2d 1324 (Miss. 1982). See also Turner v. Turner, 612 So.2d 1141, 1143 (Miss. 1993).

D. Whether the chancellor erred in interpreting Miss. Code Ann. § 97-33-7(2) as a bar to ownership of video poker machines.
While Roberta contends that the chancellor erred in interpreting 97-33-7(2) as a bar to ownership of video poker machines[5], his statement from the bench to that effect is mere dicta. After noting that the statute may prevent property interests in video poker machines, the chancellor noted that video poker machines are not specifically named in the statute. The chancellor then went on to divide all of the Grey Amusement Company equipment, which includes video poker machines. Moreover, the final order does not mention § 97-33-7(2), but does include a division *492 of the video poker machines and other equipment of Grey Amusement Company. There is no error here.

E. Whether the chancellor erred in expanding, from "possession only" to "exclusive use and possession," the rights of Clifford Grey in and to the marital domicile located near Highway 61.
Roberta claims that the difference between the chancellor's initial ruling and his final order is error because the effect of the final order prevents a partition of the Highway 61 property awarded to Clifford. This, in effect, divested Roberta of title to that property, which the chancery court is without authority to do, according to Roberta. This issue has previously been decided by this Court, with results unfavorable to Roberta.
A chancellor's bench ruling is not final, but is subject to modification by that same chancellor. Love v. Barnett, 611 So.2d 205, 208 (Miss. 1992). The chancellor's decision is not the same thing as the court's final judgment. Banks v. Banks, 511 So.2d 933, 935 (Miss. 1987). Only a final judgment is appealable. Id.
Moreover, Roberta did not seek partition or possession of the Highway 61 house in her complaint for divorce. Prior to the court signing the final order, the attorneys for both parties met in chambers where the court informed them that he intended to give Clifford the same thing he gave Roberta  exclusive use and possession. This Court affirms.

IV. CONCLUSION
This Court's standard of review precludes consideration of Roberta's first three issues because of her failure to cite any authority in support of her argument. The chancellor did not err in interpreting Miss. Code Ann. § 97-33-7(2) as a bar to ownership of video poker machines because any "interpretation" of this statute did not in any way affect the chancellor's judgment in this case. Despite his mention of the statute in his decision, the final order does not mention § 97-33-7(2), but does include a division of the video poker machines of Grey Amusement Company. Finally, the chancellor did not err in expanding Clifford's rights in the Highway 61 property from "possession only" to "exclusive use and possession." The chancellor was within his authority to modify his decision via his final order. Moreover, the evidence reveals that the chancellor intended to award Clifford exclusive use and possession all along. There being no error, this Court affirms.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., concurs with separate written opinion.
McRAE, Justice, specially concurring:
I reluctantly concur with the majority's affirmation of the chancellor's division of property between Roberta and Clifford Grey so that I might write another day. However, the majority ducks the marital property issues raised by Roberta Grey in her appeal by chiding her failure to cite any authority. But see R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990) (despite failure to cite authority, this Court considered the issue before it). This is ironic in light of this Court's protracted discussions on the subject of equitable distribution, where we have sought to break new grounds in domestic relations law on the basis of issues not even raised by the parties.
The wide disparity between Roberta and Clifford Grey's "guesstimates" of the values of certain assets provides a striking illustration of the increased need for expert testimony in divorce cases. If we are to divide property between parting husbands and wives on the basis of "equitable distribution," objective and informed expert valuation of assets and liabilities is essential to insure a fair and true division of property. Without the opinion of such experts, the equitable division of marital assets may be impossible to achieve.
NOTES
[1] This figure includes repayment of a loan in the amount of $45,000.00, which Eugene claims he did not repay his mother.
[2] Eugene claimed to owe family members $30,000.00 on this land, although he admitted there is no evidence of any indebtedness.
[3] With an attendant debt of $5,036.00.
[4] The outstanding debt on this truck at the time of trial was $16,214.43.
[5] Grey Amusement Company, the couple's business, owned video poker machines.