942 So.2d 207 (2006)
Mary Pearson HILL (One and the Same as Mary Hill Jackson), Appellant
v.
Cary L. HILL, Jr., Appellee.
No. 2004-CA-00312-COA.
Court of Appeals of Mississippi.
April 4, 2006.
Rehearing Denied August 1, 2006.
*208 James H. Herring, Canton, attorney for appellant.
*209 Sharon Patterson Thibodeaux, Brandon, attorney for appellee.
Before LEE, P.J., IRVING and ISHEE, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. Mary Hill Jackson and Cary Hill Jr. were married on January 21, 1996, and divorced on May 4, 1999. During their marriage Mary and Cary had one son, Chase. The parties agreed to a child custody and property settlement agreement which was approved by the chancellor and incorporated into the judgment of divorce. The parties agreed that they would have joint legal custody, and Mary would have primary physical custody of Chase. Mary and Cary also agreed that Cary would finance all of Chase's "daycare/preschool/kindergarten" expenses, and Cary would select the facility that Chase would attend.
¶ 2. In February 2002, Mary filed a petition to modify the judgment of divorce, seeking an increase in child support, an adjustment of the visitation schedule, and an order allowing Chase to attend kindergarten in Madison County. Cary answered, seeking sole physical custody, child support and attorney's fees. After a trial on the merits, the trial court granted primary physical custody to Cary and ordered Mary to pay child support.
¶ 3. It is from this ruling that Mary appeals, arguing six issues which we have framed as follows: (1) whether the trial court erred in modifying Chase's custody and granting Cary sole legal and physical custody and (2) whether the trial court erred in denying Mary's motion for relief from judgment. Finding no error, we affirm.
¶ 4. As a preliminary matter we address concerns raised by the parties regarding a conflict between the chancellor's amended opinion and amended final judgment, both of which were filed on March 12, 2004. Although the amended opinion awards Cary "sole legal and physical custody" of Chase, the amended final judgment orders that "Cary Hill shall have primary physical custody of Chase Hill subject to Mary's right to visitation with Chase." The final judgment further provides that the child custody and property settlement agreement entered into by Mary and Cary in 1999 "shall remain in full force and effect unless otherwise modified by this [o]rder."
¶ 5. Our supreme court has previously held that a chancellor's decision is not synonymous with the court's final judgment. Grey v. Grey, 638 So.2d 488, 492 (Miss.1994) (citing Banks v. Banks, 511 So.2d 933, 935 (Miss.1987)). Only a final judgment is subject to appeal. Id. Additionally, an opinion of the court does not necessarily form part of the judgment, but ordinarily represents the rationale for the judgment. See 46 Am.Jur.2d Judgments § 7 (1994). Although Grey and Banks address a conflict between a bench opinion and a judgment, and the case sub judice addresses a written opinion and a judgment, we agree that the chancellor's opinion is not the same as the final judgment. Accordingly, we review the chancellor's decision to modify Chase's physical, and not legal custody, as legal custody was not addressed in the amended final judgment of the court.

STANDARD OF REVIEW
¶ 6. Our standard of review for child custody cases is limited. The chancellor must be manifestly wrong, clearly erroneous, or have applied the wrong legal standard for this Court to reverse. Williams v. Williams, 656 So.2d 325, 330 *210 (Miss.1995). The denial of a motion for relief under Rule 60(b) of the Mississippi Rules of Civil Procedure is reviewed for an abuse of discretion. Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss. 1984).
I. DID THE TRIAL COURT ERR IN MODIFYING CUSTODY?
¶ 7. Mary argues that the chancellor should be reversed because he applied an erroneous legal standard in finding a material change in circumstance that had adversely affected Chase's welfare. Mary also argues that the chancellor erred in finding that Chase's best interests required a change in custody and that the chancellor erred in applying Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996).
¶ 8. In a proceeding to modify custody, the party seeking a modification must prove (1) a material change in circumstances which adversely affects the welfare of the child and (2) the child's best interests requires a change in custody. Robison v. Lanford, 841 So.2d 1119, 1124(¶ 16) (Miss.2003) (citing Brocato v. Brocato, 731 So.2d 1138, 1141(¶ 9) (Miss. 1999)). As discussed by this Court in Parker v. South, 913 So.2d 339, 344(¶ 10) (Miss.Ct.App.2005), certain cases in Mississippi jurisprudence have divided these issues into a three-step analysis: "(1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody." Id. (quoting Mabus v. Mabus, 847 So.2d 815, 818(¶ 15) (Miss.2003)). The change in circumstances "is one in the overall living conditions in which the child is found. The `totality of the circumstances' must be considered." Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984) (citing Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983)). For purposes of clarity, we will proceed with the three-step analysis.
(1) Was There a Material Change in Circumstances?
¶ 9. The trial court found that Mary afforded Chase little stability at home, including her involvement with a number of men since her divorce from Cary. The evidence presented at trial supports this conclusion.
¶ 10. While Mary and Cary's divorce was pending, Mary and Chase lived with a female co-worker, and Mary dated a man named Brad. Mary introduced Chase to Brad, taking Chase with her to Brad's apartment; however, Mary testified that Brad did not spend the night while Chase was present. Mary's relationship with Brad ended prior to her divorce from Cary, and Mary began dating a man named Steve. In October 1999, Mary and Steve purchased a house in which the couple lived with Chase and Steve's daughter. Mary testified that she and Steve did not share a bedroom until after she and Steve married.
¶ 11. Mary wed Steve on November 17, 1999, but they divorced in January 2001. During the divorce Mary and Chase moved into an apartment, and Mary began dating Darren, who Mary met through Wendy, a friend of Mary's. Mary testified that Chase was introduced to Darren as well. Mary also dated a neighbor, with whom she occasionally left Chase when she had to work late.
¶ 12. Mary developed a relationship with a doctor named Chris, and soon Mary and Chris became engaged. Mary testified that Chase's contact with Chris was limited, but that Chase was happy that Mary and Chris were planning to get married.
*211 ¶ 13. Chris was married to Lisa at the time he and Mary began their relationship, and, at the time of the modification hearing, Mary and Lisa were involved in litigation regarding the demise of Chris' and Lisa's marriage. The tensions between Lisa and Mary resulted in an accusation that Mary attempted to run Lisa off the road. Mary was subsequently arrested due to allegations that she was stalking Lisa, and, in turn, Mary sued Lisa for false arrest. The criminal charges were dismissed, but at the time of the hearing the civil actions were pending. Chase was not present in the vehicle during the alleged near accident.
¶ 14. All told, Mary had moved four times since the divorce, and Mary testified that she was planning to move again upon her marriage to Chris. The trial court found that Chase will have attended three different schools during his first three years of formal education: kindergarten in Madison, first grade in Flowood, and second grade in Clinton.
¶ 15. The trial court found that Mary could not provide Chase with a stable living environment, as evidenced by the fact that she moved four times, dated several men during the last three years, and had already been married, divorced and planned to remarry yet again since her divorce from Cary. The chancellor also found that Mary took unnecessary risks and "continued to exhibit reckless behavior," including dating a married man whose wife Mary characterized as a "psycho." The chancellor also found that Mary took unnecessary risks in printing and keeping e-mails from Chris which the chancellor characterized as pornographic.
¶ 16. Cohabitation between an unmarried man and woman "whether in adultery or fornication" is a crime in Mississippi. Miss.Code Ann. Sec. 97-29-1 (Rev. 2000). Notwithstanding such illegality, maintaining a sexual relationship outside the confines of marriage cannot be the sole ground for modifying custody. See Phillips v. Phillips, 555 So.2d 698, 701 (Miss. 1989); Cheek v. Ricker, 431 So.2d 1139, 1144 (Miss.1983); Sullivan v. Stringer, 736 So.2d 514, 518(¶ 19) (Miss.Ct.App.1999). Likewise, the custodial parent's relocation cannot be the sole ground for modifying custody. See Lambert v. Lambert, 872 So.2d 679, 685(¶ 24) (Miss.Ct.App.2003). However, considering the totality of the circumstances, including Mary's capricious relationships, Mary and Chase's inconsistent living situations, and Mary's "risk-taking," the chancellor found that a material change in circumstances had occurred. Giving due deference to the factual findings of the chancellor, we agree.
(2) Did the Change Adversely Affect the Child's Welfare?
¶ 17. Mary asserts that the chancellor erred in changing custody despite his finding that "[a]s of yet there has not been a demonstrated material adverse affect to Chase." (emphasis in original). Mary also argues that the chancellor improperly relied upon Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996). The chancellor cited the following excerpt from Riley:
[t]hat where a child living in a custodial environment clearly adverse to the child's best interest, somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment. . . . A child's resilience and ability to cope with difficult circumstances should not serve to shackle the child to an unhealthy home, especially when a healthier one beckons.
Id. at 744. Mary argues that the chancellor erred in changing Chase's custody, for Chase had yet to suffer actual detriment. *212 We disagree, and refer to the relevant portion of the chancellor's findings:
Mary has had luck on her side. Chase was not in the car when the incident between her and [Chris'] wife took place. Chase was not present when his mother was arrested. Chase's peers are too young to make remarks about his mother's numerous boyfriends. Chase hasn't been hurt or harmed by one of the numerous men his mother brings into their home and lives. Chase isn't old enough to understand what an alienation of affection lawsuit is. Chase didn't find the pornographic letters that Dr. Jackson wrote to his mother. Chase is a resilient child who has not yet demonstrated ill affects of Mary's numerous moves and his numerous school changes. But Chase is growing up; Chase needs a home in which high morals, normal relationships and stability are part of his life. The [c]ourt is convinced, after considering all of the evidence presented, that Mary's actions are having an adverse affect on Chase. Chase should not have to bear this burden; he should not have to demonstrate resilience. He should be a little boy in a stable, secure, loving environment.
¶ 18. In Jernigan v. Jernigan, 830 So.2d 651, 653-54 (¶¶ 5-6) (Miss.Ct.App.2002), the chancellor modified custody in favor of the father. The mother appealed, arguing that no detrimental affect on the child had occurred. Indeed, counselors who interviewed the child found that while the child was not manifesting problems at the time, the child would suffer adverse impacts from the mother's behavior in the future. Finding no abuse of discretion, this Court affirmed. Id. Similarly, we find no abuse of discretion in the chancellor's finding that Chase was suffering, and would suffer, harmful affects in the foreseeable future.
¶ 19. We note that after the parties submitted briefs in this case, this Court issued McSwain v. McSwain, No.2004-CA-00088-COA, ___ So.2d ___, 2005 WL 2979678 (Miss.Ct.App. Nov.8, 2005), which we find is distinguishable from the instant case. In McSwain, the chancellor modified custody of the parties' child, granting the father custody in spite of the mother's recent drug rehabilitation. The chancellor found that the child's future rested upon the wife's ability to refrain from her past drug habits, and, accordingly, ruled that the potential for her to relapse constituted a change in circumstances warranting a modification in custody. This Court reversed, finding that the chancellor erred in considering the potential for adverse effects on the child, rather than the child's home life at the time of the hearing. Id. at (¶ 13).
¶ 20. We find that McSwain is inapplicable, for, unlike the mother in McSwain, at the time of the custody hearing, Mary had not rectified the behavior which created an unstable environment for her child. As the supreme court in Riley opined, a chancellor "is never obliged to ignore a child's best interest in weighing a custody change; in fact, a chancellor is bound to consider the child's best interest above all else." Riley, 677 So.2d at 745. Because the best interests of the child are our fundamental concern, we find no abuse of discretion in removing Chase from his current environment of instability.
(3) Do Chase's Best Interests Mandate a Change in Custody?
¶ 21. The court considers the following factors in determining the child's best interests: (1) age, health and sex of the child; (2) a determination of the parent who has had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the *213 willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 22. The chancellor conducted a thorough Albright analysis, and on appeal Mary does not directly address the trial court's evaluation and application of those factors; however, we find no error.
¶ 23. The chancellor found that the age, health and sex of the child did not favor either parent. The chancellor found that Chase spent fifty percent of his time with each parent under the parties' present visitation schedule; therefore, this factor did not weigh in favor of either parent. Although both Mary and Cary take Chase to church and participate in his sporting events, the chancellor found that Cary had better parenting skills because, "Cary makes his life decisions with Chase as the number one priority at all times." The chancellor found that both parties had the willingness and ability to provide primary child care. The chancellor further found that the parties' respective employment and employment responsibilities did not weigh in favor of either parent. Likewise, the chancellor found that the physical and mental health of the parties and the emotional ties between the parents and Chase did not favor either party.
¶ 24. The chancellor found that Cary was more morally fit, noting Mary's conduct as previously discussed in this opinion. The chancellor also noted that Cary had matured significantly and that Mary had presented no evidence that Cary was morally unfit. The chancellor found that Chase's home, school and community record favored Cary, as Cary has attended the same church since the 1980's; Chase's t-ball and slow-pitch teams are where Cary lives in southern Madison county; and Cary's home with his new wife is close to extended family. The chancellor found that Cary could offer Chase a more stable living environment, as Cary's life with his new wife was stable and the extended family was present and willing to assist in rearing Chase. The chancellor also considered the testimony of former counselor Paul Davey, who saw Chase and testified that a child's moral development began at the age of six and is complete around the ages of eleven or twelve. As Chase was not old enough to express a custody preference under the law, this factor was not considered.
¶ 25. The chancellor concluded that Cary could provide a more stable environment for Chase, and that it was in Chase's best interests to grant Cary primary physical custody. As the chancellor's conclusions are supported by the record, we find no abuse of discretion. This issue is without merit.
II. DID THE TRIAL COURT ERR IN DENYING MARY'S MOTION FOR RELIEF FROM JUDGMENT?
¶ 26. "[M]otions for relief under Rule 60(b) are generally addressed to the sound discretion of the trial court and appellate review is limited to whether that discretion has been abused." Stringfellow, 451 So.2d at 221. Additionally, the case will not be re-litigated on a Rule 60(b) motion. Id. Rule 60(b) provides in pertinent part as follows:

*214 (b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc.
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) fraud, misrepresentation, or other misconduct of an adverse party;
(2) accident or mistake;
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6) any other reason justifying relief from the judgment.
¶ 27. To warrant relief pursuant to Rule 60(b)(1), the movant must prove fraud, misrepresentation or other misconduct by clear and convincing evidence. Stringfellow, 451 So.2d at 221. To prevail on a claim of fraud, the movant must show the following: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of the statement's falsity or ignorance of its truth, (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. Id.
¶ 28. In her motion, Mary argues that she should be have been permitted to call Darren to the stand as a rebuttal witness and that the chancellor erred in excluding his testimony. Mary has failed to show that she is entitled to relief under Rule 60(b)(1), as she has not shown fraud, a misrepresentation or other misconduct by clear and convincing evidence. Furthermore, Mary has not pointed to any content in Darren's testimony which would constitute newly discovered evidence.
¶ 29. Mary also argues that certain mistakes were made at trial, including the court's admitting the testimony of Paul Davey, who testified as a counselor at the hearing. Mary alleged that Cary's attorney also represented Davey, and that Davey also provided counseling to Chris' wife Lisa. The motion also informed the court that subsequent to the modification hearing, Davey had been stripped of his license as a professional counselor.
¶ 30. The chancellor found that, based upon a sworn statement by Cary's attorney, she never represented Davey. Furthermore, the court noted that Davey's ultimate recommendation was that Mary retain physical custody. In denying the motion, the court opined that he drew his own conclusions from the testimony at trial, and that his findings were not dependant on any one witness.
¶ 31. To prevail under Rule 60(b)(2), a party must show that she "was justified in failing to avoid mistake or inadvertence." Id. "Rule 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances, and that neither ignorance nor carelessness on the part of an attorney will provide grounds for relief." Id.
¶ 32. Mary called Davey to the stand, presumably because Davey's testimony and recommendation were favorable to her case. The chancellor disregarded Davey's ultimate recommendation, making his own factual findings regarding Chase's best interests. A mistake under Rule 60(b)(2) is not measured by the import a chancellor places on a witness's testimony. In domestic relations cases, the chancellor assesses *215 the credibility of witnesses. Glissen v. Glissen, 910 So.2d 603, 609(¶ 18) (Miss.Ct.App.2005). The chancellor was within his authority to weigh the power of Davey's testimony as he saw appropriate.
¶ 33. Because Mary failed to show fraud or mistake, or any other reason for which relief should be granted under Rule 60(b), we find no abuse of discretion in denying the motion. This assignment of error is without merit.
¶ 34. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.