980 So.2d 308 (2007)
Lindy Burgess PURVIANCE, Appellant
v.
Stephen Christopher BURGESS, Appellee.
No. 2006-CA-00931-COA.
Court of Appeals of Mississippi.
November 27, 2007.
Rehearing Denied April 22, 2008.
*309 John R. McNeal, Jr., attorney for appellant.
Julie Ann Epps, Canton, E. Michael Marks, Jackson, attorneys for appellee.
Before MYERS, P.J., BARNES and ROBERTS, JJ.
*310 MYERS, P.J., for the Court.
¶ 1. Lindy Burgess Purviance Spell (Purviance) seeks review of the order of the Hinds County Chancery Court denying her motion for modification of the child custody arrangement as well as the sua sponte orders increasing child support and dissolving the existing joint custody arrangement. Purviance argues the chancellor erred in granting full custody of the parties' minor child, Trettson Burgess (Trettson), to the father, Stephen Christopher Burgess (Burgess). Purviance further argues that the chancellor erred in determining there was not a material change in circumstances warranting a full grant of custody and asserts that she should be awarded primary custody of Trettson.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Lindy Burgess Purviance Spell and Stephen Christopher Burgess were married on June 19, 1999, and one child was born of the marriage, Trettson McClain Burgess. During their separation, both parties agreed to full joint physical custody, with Purviance serving as the primary custodial parent and Burgess receiving reasonable visitation rights. The parties were granted a divorce on April 5, 2001.
¶ 3. A modification of the original custody agreement was subsequently entered, limiting the visitation of Burgess with the minor child, finding him in contempt of court for failure to pay child support and awarding temporary support payments to Purviance. A final order awarded Purviance child support.
¶ 4. On November 17, 2003, Burgess petitioned the court for modification, seeking custody of Trettson. The court granted his petition and awarded Burgess primary physical custody of the child, giving Purviance standard visitation rights. The chancellor further required Purviance to pay child support.
¶ 5. Over a year later, Burgess sent notice to the court that he had moved to Cullman, Alabama. In response, Purviance moved for a modification of child custody and for a temporary restraining order on June 15, 2005. Purviance also raised concerns that Trettson had suffered various injuries and bruises while in his father's care. Purviance was granted temporary custody, however, the motion for modification was later heard on February 6-7, 2006. The court awarded full physical and legal custody to Burgess, visitation to Purviance, and increased the amount of child support required of Purviance.
¶ 6. This appeal followed. Purviance seeks review of whether the chancellor erred in granting full legal and physical custody of the minor child, Trettson, to Burgess. Purviance also asks this Court to review whether the chancellor's sua sponte increase of child support owed to Burgess constitutes error.

STANDARD OF REVIEW
¶ 7. The standard of review used by this Court in domestic relations cases is limited by the substantial evidence/manifest error rule. Hensarling v. Hensarling, 824 So.2d 583, 586(¶ 7) (Miss.2002) (citing Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994)). This Court will not "disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." Hensarling, 824 So.2d at 586(¶ 7) (citing Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994)).
¶ 8. Further, our standard of review regarding child custody cases is also limited. This Court will reverse a chancellor's decision regarding child custody determinations only when "the decision of *311 the trial court was manifestly wrong or clearly erroneous, or an erroneous legal standard was employed." Hensarling, 824 So.2d at 587(¶ 8); Wright v. Stanley, 700 So.2d 274, 280 (Miss.1997); Williams v. Williams, 656 So.2d 325, 330 (Miss.1995). This Court will always treat the best interest of the child as the "polestar consideration." Robison v. Lanford, 841 So.2d 1119, 1122(¶ 9) (Miss.2003) (citing Hensarling, 824 So.2d at 587(¶ 8)).
¶ 9. "In proceedings to modify custody, `the prerequisites [are] (1) proving a material change in circumstances which adversely affects the welfare of the child and (2) finding that the best interest of the child requires the change of custody.'" Robison, 841 So.2d at 1124(¶ 16) (quoting Brocato v. Brocato, 731 So.2d 1138, 1141(¶ 9) (Miss.1999)). The burden of proof rests with the parent requesting modification. Id.

DISCUSSION
¶ 10. First, Purviance argues that she met her burden of proof by showing a material change in circumstances had occurred. Purviance asserts that she also properly presented evidence that the material change was adverse to the minor child, warranting a modification of the child custody arrangement. Purviance claimed that Burgess and his wife failed to properly supervise and discipline the minor child, causing various injuries to Trettson. Purviance also claimed her child was at risk of suffering mental and emotional damage if Trettson remained in the custody of his father, Burgess.
¶ 11. Purviance further asserted that both Burgess and his wife failed to cooperate with Purviance, causing her to be increasingly isolated from Trettson. Purviance also testified at trial that she had been prevented from staying informed regarding Trettson's medical and educational progress and treatment while in Burgess's care. Purviance additionally argued that the environment provided by Burgess is adverse to Trettson's best interest and that she is able to provide a better home because of her improved circumstances.
¶ 12. Additionally, Purviance argues that the chancellor erred in granting full physical and legal custody of Trettson to Burgess. Purviance argues that the chancellor erred in sua sponte dissolving the joint custody arrangement in favor of full custody to Burgess. Purviance claims the record does not support the chancellor's determination on that issue and the ruling was neither equitable nor just.
¶ 13. Finally, Purviance disputes the chancellor's finding that there has been a material change in circumstances since the original decree awarding child support was entered. As such, Purviance reasons that the chancellor erred in granting additional support to Burgess because no evidence existed regarding additional or increased expenses with regard to Trettson. Purviance contends that the chancellor failed to articulate the factors he relied upon in awarding increased child support to Burgess. Additionally, Purviance argues that the court erred in sua sponte ordering her to pay an increased amount of child support, since Burgess failed to ask for that relief in his pleadings.
¶ 14. Burgess argues the trial court was correct in holding that Purviance failed to meet her burden of proof regarding a material change in circumstances in order to gain full custody of Trettson. Burgess argues that the trial court was correct in finding there was no credible evidence that either he or his wife, Amanda, had abused the minor child in any way. Further, Burgess argues that the trial court simply chose to believe Burgess regarding a particular instance involving his *312 leaving instructions for Trettson's school to avoid contacting Purviance except in the case of a medical emergency. Burgess further points out that the chancellor relied upon the testimony of his expert, Dr. Kimberly Ray, who testified that Burgess was providing Trettson with her recommended course of treatment. Additionally, Burgess argues that the chancellor was correct in finding that he would be able to adequately provide for Trettson's needs and that he did not isolate Trettson from Purviance.
¶ 15. Finally, Burgess points out that under Mississippi Code Annotated section 95-5-23, the chancellor may make all orders regarding the care, maintenance, and custody of children. Additionally, Burgess argues that the chancellor is allowed to grant relief when evidence establishes that a party to the proceeding is entitled to the relief even if not asked for in his petition. Burgess argues that Purviance presented evidence regarding her household's income and presented testimony that she was in a better position to support Trettson than Burgess. Burgess argues in light of that fact, Purviance was not prejudiced by the chancellor's decision to increase her child support obligation. Burgess argues that the chancellor based the decision to increase support based on evidence of income and on Trettson's increased medical needs.
I. WHETHER THE CHANCELLOR ERRED IN FINDING NO MATERIAL CHANGE ADVERSE TO THE CHILD HAD OCCURRED
¶ 16. First, this Court must determine whether the chancellor erred in finding that Purviance failed to show a material and substantial change in circumstances occurred so as to warrant a change in custody. In order for a chancellor to modify a previous custody arrangement, the moving party must show: "(1) a material change in circumstances which adversely affects the welfare of the child, and (2) the child's best interests requires a change in custody." Hill v. Hill, 942 So.2d 207, 210(¶ 8) (Miss.Ct.App.2006). Here, the chancellor determined that there was no material change in circumstances and also that it would be in the child's best interest to remain in the sole custody of Burgess, rather than Purviance. In order to reverse this ruling, this Court would have to determine that the chancellor was clearly erroneous, manifestly wrong, or had applied the wrong legal standard. Id. at 210(¶ 6). For the reasons stated below, we cannot find that the chancellor's findings were either clearly erroneous, manifestly wrong, or that the chancellor applied the wrong legal standard.
¶ 17. The chancellor made several important findings. Purviance alleged at trial a material change had occurred because Burgess was unable to provide specialized treatment or necessities for the child and that he had failed to properly supervise the child, resulting in possible abusive injuries. However, the chancellor found that Purviance never actually accused Burgess of abuse during trial testimony. The chancellor also found there was no evidence that Burgess or his wife were the source of the child's injuries. The chancellor additionally found there were plausible explanations and documentary evidence regarding the injuries Trettson sustained while in his father's care. Further, the chancellor noted that the record reflected that Dr. Yung, Purviance's expert regarding the child's bruises, was uncomfortable confirming that there were definite signs of physical abuse without learning more about Trettson's medical history.
¶ 18. The chancellor also noted that Trettson had been diagnosed with both autism and attention deficit hyperactivity *313 disorder (ADHD). The chancellor determined that Trettson's developmental problems better explain the cause of his frequent minor injuries. As such, the chancellor determined that Purviance had failed to show that a material and adverse change of circumstances had occurred.
¶ 19. Additionally, according to the record, Burgess took Trettson to Dr. Ray when he obtained custody. Dr. Ray diagnosed him with autism and began treating Trettson up to four hours a week. The record reflects that Burgess also enrolled Trettson in special classes at Clinton Park Elementary School, specifically designed for children with autism. Dr. Ray testified at trial that Burgess was both interested and an active participant in the child's treatment program. Dr. Ray further testified she approved of the treatment course that Burgess was following for Trettson. Further, the chancellor determined that Burgess and his wife had a total monthly income of $3,400 and they could cover Trettson under their insurance policy. Additionally, the chancellor determined that Burgess was planning to obtain a second job to help defray expenses. From the evidence presented on the record, we cannot find the chancellor's ruling was clearly erroneous.
¶ 20. The chancellor further commented that it would be in the best interest of the child to grant Burgess the authority to make all decisions regarding Trettson's education and medical care in the future. The record fully supports this proposition. The chancellor found this would create less friction between the parties, noting the parents' turbulent past regarding custody and visitation of the minor child. We find that the chancellor properly made a determination that in order to provide the best and most consistent care for Trettson, one parent should be the primary decision maker regarding his treatment. The chancellor did temper the ruling to prevent Purviance from being "isolated" from Trettson. The chancellor instructed Burgess to consult with Purviance regarding Trettson's schedule, medical, and other routines so that she may fully participate in Trettson's life. The issue regarding child custody was properly before the chancellor and the chancellor had the discretion to make rulings regarding that issue. Further, the record reflects evidence establishing that both parents had interfered with the crucial treatment Trettson needs in order to fully develop. Also, there was extensive testimony from both parties regarding which environment would better suit Trettson's needs. The issue of custody was fully and vigorously tried on the merits and both parties presented extensive evidence regarding custody. The chancellor determined it to be in the best interest of the child to make his custodial situation more conducive to continuous learning. This Court can find no error in the chancellor's grant of full custody to Burgess.
II. WHETHER THE CHANCELLOR ERRED BY SUA SPONTE DISSOLVING JOINT CUSTODY AND INCREASING THE CHILD SUPPORT OBLIGATIONS
¶ 21. Finally, the chancellor found regarding Trettson's increased medical needs, that Dr. Ray presented a favorable course of treatment for the child. As a result, the chancellor found that if Dr. Ray's course of treatment were instituted, it would cost approximately $700 per week. The chancellor ordered an increase in Purviance's child support obligation in the amount of $75, totaling $250 per month. The chancellor based the increase on Purviance's previous income reports. Purviance filed a financial statement with the court showing she earned at least $1250 per month. The chancellor specifically *314 found that Trettson's medical costs had increased and raised the support accordingly.
¶ 22. After this Court's review of the record, there is no indication that Burgess requested increased support from Purviance. Although there was testimony regarding the financial means of each party, and extensive testimony regarding the cost of medical treatment for Trettson under Dr. Ray, there was no request for additional child support to defray the cost of medical treatment.
¶ 23. The chancellor determined that Trettson has special needs, and as such, child support should be deviated upward from statutory support guidelines to reflect as much and to require Purviance to pay an increased amount. However, this was not an issue presented during trial. Purviance was seeking modification of custody and also seeking child support if custody were to be awarded to her. However, she was not sufficiently on notice that the court was considering increasing the amount of child support she would be required to pay to Burgess. While it cannot be said that the increase in child support was unreasonable, it was not requested by Burgess.
¶ 24. "[D]ue process require[s] that appellant have fair notice from an appropriate pleading that an increase in the amount of the support award was being sought and was under consideration, so that he might have reasonable opportunity to offer evidence touching both the needs of the children and his ability to pay." Massey v. Huggins, 799 So.2d 902, 909(¶ 25) (Miss.Ct.App.2001) (citing Wansley v. Schmidt, 186 So.2d 462, 465 (Miss. 1966)). More importantly, "a party's own request does not create notice that should she fail in her claims for child support, that she becomes subject solely by virtue of her own petition to having a child support obligation placed on her." Id. at 910(¶ 31). Essentially, "it is error for a chancellor, upon the chancellor's own motion, to order a party to pay child support `absent any notice that [the party] would be required to defend such a proposition and absent any notice that the court was considering ordering [the party] to pay child support.'" Id. at 909(¶ 27) (citing Morris v. Morris, 359 So.2d 1138, 1139 (Miss.1978)). We find that the chancellor committed error in sua sponte granting an increase in the amount of child support Purviance would be required to pay. As such, that portion of the judgment granting Burgess increased support payments is reversed and rendered.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE TO BE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.