# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01552-COA

IN THE MATTER OF C.T., A MINOR, JASON            APPELLANT
TAYLOR AND JESSICA TIMMONS:
JASON K. TAYLOR

v.

JESSICA TIMMONS                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/2015 |
| TRIAL JUDGE: | HON. JOHN S. GRANT III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | M. JUDITH BARNETT |
| | JEANINE M. CARAFELLO |
| ATTORNEY FOR APPELLEE: | JESSICA TIMMONS (PRO SE) |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | MODIFIED PRIOR AGREED ORDER AND FOUND APPELLANT IN CONTEMPT |
| DISPOSITION: | AFFIRMED - 06/06/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1. Jason Taylor appeals the decision of the chancery court, alleging that the chancellor erred when he (1) found that Jessica Timmons was entitled to decide which school the child would attend; (2) modified his child-support obligation; (3) modified the visitation schedule; (4) found him in contempt for failure to make timely child-support payments and failed to find Timmons in contempt for failure to notify him of her new address; and (5) assessed him with $2,000 in attorney's fees. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Taylor and Timmons had a child in 2011 but were never married.  In January 2013, Taylor and Timmons filed a joint complaint for determination of paternity, child custody, and other relief, and the Rankin County Chancery Court rendered an agreed order pursuant to their joint complaint.  As it relates to this appeal, the agreed order specified that: both parties shared joint legal custody of the minor child; Timmons was awarded primary physical custody, and Taylor was awarded visitation; Taylor was to pay Timmons child support in the amount of $300 per month due on the first day of each and every month; and Taylor was also to pay daycare and after-school expenses, public and/or private school tuition for the child beginning in first grade, all extracurricular activity expenses, one-half of uninsured medical expenses, and also to maintain health insurance for the child.

¶3.    In August 2013, the Mississippi Department of Human Services (DHS) filed a petition on behalf of Timmons to modify the final judgment, seeking an upward modification of Taylor's child-support obligation.  Taylor filed an answer and counter-complaint, seeking a modification of the agreed order to award him physical custody of the child.  Then, in April 2014, Timmons, represented pro bono by an attorney volunteering through Mission First's Legal Aid Office, filed a petition for a judgment of contempt, alleging that Taylor had failed to pay child support and also requesting an award of attorney's fees.  Taylor filed his answer and later filed a petition for litigation accountability, which alleged he was never in arrears. Finally, in October 2014, Taylor filed a petition for contempt, alleging that Timmons had denied him his visitation rights and seeking an award of attorney's fees.

¶4.    The chancellor heard the matter on the above pleadings on November 17, 2014,

2

September 16, 2015, and September 17, 2015. At the close of the hearing, the chancellor made his findings, which were reflected in the final judgment issued in October 2015. From this judgment, Taylor now appeals.

## STANDARD OF REVIEW

¶5. Timmons did not file a brief in response to Taylor's appeal. Usually, "failure of an appellee to file a brief is tantamount to confession of error and will be accepted as such . . . ." *Rogillio v. Rogillio*, 101 So. 3d 150, 153 (¶12) (Miss. 2012) (quoting *Dethlefs v. Beau Maison Dev. Corp.*, 458 So. 2d 714, 717 (Miss. 1984)). However, this Court has previously held that "when matters on appeal touch the welfare of a minor child, then regardless of whether a party filed a brief, this Court 'will reach the merits of the issues in this appeal, though we proceed unaided by a brief from the appellee.'" *Self v. Lewis*, 64 So. 3d 578, 584 (¶28) (Miss. Ct. App. 2011) (quoting *S.S. v. S.H.*, 44 So. 3d 1054, 1056 (¶8) (Miss. Ct. App. 2010)); *see also Barber v. Barber*, 608 So. 2d 1338, 1340 (Miss. 1992). Accordingly, in the instant custody case, we reach the merits of the case and apply our familiar standard of review as stated below.

¶6. Our standard of review in domestic-relations cases is limited. *Bowen v. Bowen*, 107 So. 3d 166, 169 (¶6) (Miss. Ct. App. 2012) (citing *Arrington v. Arrington*, 80 So. 3d 160, 164 (¶11) (Miss. Ct. App. 2012)). "The findings of a chancellor will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or an erroneous legal standard was applied." *Id*. (internal quotation marks omitted). "[W]e review de novo the chancellor's interpretation and

3

application of the law." *Seale v. Seale*, 150 So. 3d 987, 989 (¶5) (Miss. Ct. App. 2014) (citing *Singley v. Singley*, 846 So. 2d 1004, 1006 (¶5) (Miss. 2002)).

**DISCUSSION**

### I. Decision Regarding Child's Education

¶7. Taylor argues that the chancellor erred when he found that although Timmons and Taylor shared joint legal custody, Timmons—as the custodial parent—was entitled to make decisions regarding where the child would attend school. At trial, the chancellor noted that Taylor felt strongly that the child should attend a certain private school. The chancellor also noted that Taylor was given input to voice his position, but that the ultimate decision in regard to where the child would attend school belonged to Timmons as the custodial parent. For support, Taylor cites Mississippi Code Annotated section 93-5-24(5)(e) (Rev. 2013), which states in relevant part:

> "joint legal custody" means that the parents or parties share the decision-making rights, the responsibilities and the authority relating to the health, education and welfare of a child. An award of joint legal custody obligates the parties to exchange information concerning the health, education and welfare of the minor child, and to confer with one another in the exercise of decision-making rights, responsibilities and authority.

¶8. Taylor is correct that joint legal custody imparts shared decision-making rights relating to the child's education. However, Taylor fails to note that section 93-5-24(5)(e) also provides that in cases of joint physical and legal custody, "*unless allocated, apportioned or decreed*, the parents or parties shall confer with one another in the exercise of decision-making rights, responsibilities and authority." (Emphasis added). Here, the chancellor allocated to Timmons the "discretion to make a determination about where the child goes to

4

school."

¶9. "Mississippi statutory law and jurisprudence recognize that the chancellor may indeed allocate decision-making and duties to each parent sharing joint legal custody." *Carpenter v. Lyles*, 120 So. 3d 1031, 1037 (¶22) (Miss. Ct. App. 2013) (citing *Goudelock v. Goudelock*, 104 So. 3d 158, 165 (¶¶29-30) (Miss. Ct. App. 2012); *Purviance v. Burgess*, 980 So. 2d 308, 312-13 (¶¶18-20) (Miss. Ct. App. 2007)). "In cases where decision[-]making was apportioned, courts have determined that joint legal custody, including the communication required in support of such relationship, requires no moment-to-moment input or veto power over every large and small decision on child rearing . . . ." *Id*. Mississippi caselaw also recognizes that "the custodial parent may determine the child's upbringing, including his education and health and dental care. Such discretion is inherent in custody. It is vested in the custodial [parent.]" *Clements v. Young*, 481 So. 2d 263, 267 (Miss. 1985); *see also Ayers v. Ayers*, 734 So. 2d 213, 217 (¶20) (Miss. Ct. App. 1999).

¶10. Here, the chancellor was well within his discretion to allocate this decision-making to one parent. Further, our caselaw favors the custodial parent having the discretion for such a decision. Accordingly, we do not find that the chancellor abused his discretion in allocating to Timmons the decision-making authority in regard to where the child attends school. Therefore, this issue is without merit.

## II. Child-Support Modification

¶11. Taylor argues that the chancellor erred when he modified Taylor's child-support obligation from the agreed order of $300 per month to $1,500 per month. Specifically,

5

Taylor argues that the chancellor's deviation from the statutory guidelines lacks adequate findings.

¶12. "A [chancellor] may modify a child-support award if there has been 'a substantial or material change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified.'" *Garcia v. Garcia*, 97 So. 3d 109, 112 (¶12) (Miss. Ct. App. 2012) (quoting *Edmonds v. Edmonds*, 935 So. 2d 980, 987 (¶19) (Miss. 2006)). Mississippi Code Annotated section 43-19-101(1) (Rev. 2015) sets forth the guidelines for calculating child support. The guidelines establish a rebuttable presumption that for one child, the child-support award should be fourteen percent of the noncustodial parent's adjusted gross income. *Id*. "There is a rebuttable presumption the guideline amount is correct both in determining the amount of the initial award and in modifying that award." *Evans v. Evans*, 75 So. 3d 1083, 1090 (¶29) (Miss. Ct. App. 2011). "To deviate from the presumptively correct amount, the chancellor must make 'a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in [Mississippi Code Annotated section] 43-19-103.'" *Evans*, 75 So. 3d at 1090 (¶30) (quoting Miss. Code Ann. § 43-19-101(2) (Rev. 2009)).

¶13. In the instant case, the chancellor found that a material change in circumstances had occurred, justifying the child-support modification—namely: an increase in Taylor's income, the increased age of the child, and the total available assets. The chancellor then ordered that the child support be increased from $300 to $1,500 per month. Finding that Taylor's

adjusted net income exceeded $232,641, the chancellor noted that a strict application of section 43-19-101(1) would require Taylor to pay approximately $2,700 per month. However, the chancellor found that a strict application would be "unjust and inappropriate after considering all the facts and circumstances," which included Taylor's payment of health and dental insurance, all uncovered medical and dental expenses, extracurricular activities, and potential future private-school tuition. In view of the facts and circumstances in the record, the chancellor provided sufficient justification for modifying Taylor's monthly child-support payments and deviating from the statutory guidelines. This issue is without merit.

### III. Modification of Visitation Schedule

¶14. Taylor argues that the chancellor abused his discretion when he modified the visitation schedule. "A chancellor may modify visitation provisions if there is a showing that the prior decree for reasonable visitation is not working." *Gilliland v. Gilliland*, 984 So. 2d 364, 370 (¶22) (Miss. Ct. App. 2008) (citing *Cox v. Moulds*, 490 So. 2d 866, 869 (Miss. 1986)). "This Court will affirm such a modification if the decision was supported by substantial evidence." *Id*. (citing *Bratcher v. Surrette*, 848 So. 2d 893, 897 (¶21) (Miss. Ct. App. 2003)).

¶15. Per the 2013 agreed order, Taylor was awarded

> visitation with the minor child every other week from the time that school recesses on Thursday (or at 3:00 p.m. when school is not in session) and ending on the following Monday morning at which time Jason Taylor shall return the child to school/daycare (or to Jessica Timmons when school is not in session and if daycare is closed).

The agreed order also awarded Taylor visitation "for two (2) periods of two (2) weeks each during the [s]ummer every year." The chancellor amended Taylor's weekend-visitation

7

schedule to "the first, third, and fifth weekends of each month from 6 o'clock p.m. on Friday to 6 o'clock p.m. on Sunday." The chancellor also awarded Taylor summer visitation "for the [first] two weeks in June beginning on the [first] Friday in June and the last two weeks in July ending on the last Friday[,] from 6:00 p.m. until 6:00 p.m."

¶16.   Taylor argues that the chancellor's modification was an abuse of discretion because neither party requested the modification or presented evidence that the visitation schedule was not working. However, the record is replete with evidence that the visitation schedule was not working. Though neither party petitioned the chancery court for modification of visitation, Taylor did file a petition for contempt, asserting that he was not getting visitation with the child. Taylor also testified extensively that he was unable to visit with the child. Timmons testified that she had not denied Taylor visitation, but that she had begged Taylor to visit with the child. The chancellor also noted that there was some confusion between the parties regarding the details of visitation under the agreed order. As such, there was a clear showing that the prior visitation order was not working, and the chancellor's finding that a modification was necessary was supported by substantial evidence. Given the chancellor's "broad discretion to determine the specific times for visitation," the chancellor did not abuse his discretion in modifying the visitation schedule. *Moreland v. Spears*, 187 So. 3d 661, 666 (¶17) (Miss. Ct. App. 2016) (citation omitted). This issue is without merit.

### IV.   Findings of Contempt

¶17.   Taylor argues the chancellor erred when he found him in contempt for being behind in child-support payments totaling $1,969.23. "Enforcing compliance with a court order is

8

a matter of civil contempt." *Evans*, 75 So. 3d at 1087 (¶14) (citing *Dennis v. Dennis*, 824 So. 2d 604, 608 (¶8) (Miss. 2002)). "Contempt matters are committed to the substantial discretion of the trial court[,] which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than are we." *Riley v. Riley*, 196 So. 3d 1159, 1162 (¶9) (Miss. Ct. App. 2016) (quoting *Williamson v. Williamson*, 81 So. 3d 262, 266 (¶11) (Miss. Ct. App. 2012)). "This Court will not reverse a contempt citation where the [chancellor's] findings are supported by substantial credible evidence." *Id*. (quoting *Witters v. Witters*, 864 So. 2d 999, 1004 (¶18) (Miss. Ct. App. 2004)).

¶18. The 2013 agreed order stated that Taylor's child-support obligation of $300 per month was "to be due and paid on the [first] day of each and every month." Timmons testified that she was not receiving payments, so she then went to DHS to enforce the child-support order. DHS, on behalf of Timmons, presented substantial credible evidence that Taylor had not paid several months of child support, as required by the agreed order. Though Taylor presented evidence of several direct payments made to Timmons, they were made after the agreed order's due date. As such, the record is clear that Taylor was not in compliance with the agreed order at the time the petition for contempt was filed. Therefore, the chancellor's finding of contempt based upon untimely payments was not erroneous. Furthermore, the chancellor's finding of contempt was followed by a finding that Taylor had purged himself of contempt. This issue is without merit.

¶19. Taylor also argues that the chancellor erred by not finding Timmons in contempt for violating Uniform Chancery Court Rule 8.06, which requires each party to notify the

9

chancery clerk and the other party of a change in address. Timmons admitted that she moved to Atlanta, Georgia, and did not notify Taylor of her address. The chancellor found that although Timmons did not notify Taylor of a change in address, her actions did not rise to the level of contumacious contempt because she was unaware of the requirement and was not represented by a lawyer at the time. The record also indicates she was only in Georgia for a couple of weeks before she moved back to Mississippi. Again, given the substantial discretion of the trial court to determine contempt matters, we find no error. This issue is without merit.

## V.    Attorney's Fees

¶20.    Taylor argues that the chancellor erred when he awarded $2,000 in attorney's fees to Timmons because Timmons was represented by an attorney volunteering pro bono through Mission First's Legal Aid Office. Taylor further argues that the chancellor's award of attorney's fees was not supported by an itemized bill, and that the chancellor did not delineate how much of the award was attributable to the modification aspect of the litigation or discuss the *McKee*[1] factors.

¶21.    In the instant case, the chancellor explicitly stated that the attorney's fees were not awarded in relation to the modification proceeding but the contempt action. "When a party is held in contempt for violating a valid judgment of the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Riley,* 196 So. 3d at 1163 (¶19) (quoting *Wilson v. Stewart*, 171 So. 3d 522, 529

---

[1]*McKee v. McKee*, 418 So. 2d 764 (Miss. 1982).

(¶21) (Miss. Ct. App. 2014)).  As the chancellor properly noted, it is not necessary to establish the *McKee* factors in a contempt action.  *Id*. at 1165 (¶28) (citing *Howard v. Howard*, 968 So. 2d 961, 979 (¶48) (Miss. Ct. App. 2007)).  Furthermore, Mississippi Code Annotated section 9-1-41 (Rev. 2014) provides:

> In any action in which a court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.

¶22.    Here, the chancellor determined that the award of $2,000 in attorney's fees to Timmons was a reasonable amount based on his experience, observation, and the information before him, i.e., the pleadings that requested the attorney's fees and a three-day hearing that required the presence of her attorney.  This issue is also without merit.

¶23.    **THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

   **IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**