# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00063-COA

**MICHAEL DIXON**                                                                    **APPELLANT**

**v.**

**CHRISTY HAYDEN OLMSTEAD AND**                                    **APPELLEES**
**MISSISSIPPI DEPARTMENT OF HUMAN**
**SERVICES**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2018 |
| TRIAL JUDGE: | HON. MICHAEL L. FONDREN |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW STEPHEN LOTT |
| ATTORNEYS FOR APPELLEES: | CHRISTY HAYDEN OLMSTEAD (PRO SE) |
| | DARNELL L. NICOVICH |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/26/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Michael Dixon appeals from the George County Chancery Court's December 17, 2018 order increasing his child-support obligation and awarding his attorney's fees relating to a contempt action that he initiated. On appeal, Dixon argues that the chancellor erred in modifying his child-support obligation because no evidence existed to show a material change in circumstances warranting the modification. Dixon also argues that the chancellor erred in awarding him only $1,000 in attorney's fees as a result of the contempt action.

¶2.     After our review, we find the chancellor was within his discretion to award Dixon

only $1,000 in attorney's fees as a result of the contempt action. We also find that the chancellor had sufficient information before him to support his modification of Dixon's child-support obligation. However, we reverse and remand this matter to the chancellor for the introduction of additional evidence as to Dixon's income to support the modified amount of his child-support obligation. We therefore affirm the chancellor's judgment in part and reverse and remand in part.

**FACTS**

¶3.     Dixon and Christy Olmstead are the natural parents of the minor child Allison,[1] who was born in 2003. Dixon and Olmstead were never married, but they lived together for a short time after Allison's birth.

¶4.     In a final judgment entered on February 24, 2005, the chancellor ordered Dixon to pay Olmstead child support in the amount of $334 per month and maintain Allison on his health and medical insurance policy. The chancellor also set forth a visitation schedule for the parties, awarding Olmstead physical custody of Allison, with Dixon receiving visitation.

¶5.     According to Dixon, Olmstead initially complied with the visitation schedule set forth in the final judgment, but she eventually refused to let Dixon see Allison. Dixon testified that he has not had visitation with Allison since 2005, when Allison was two years old.

¶6.     On August 29, 2017, Dixon filed a petition to cease his child-support obligation and to terminate his parental rights as to Allison. In his petition, Dixon asserted that Olmstead had "poisoned [Allison's] mind with regard to [Dixon] to the point of no return," and

---

[1] We use a fictitious first name for the minor child.

2

therefore Dixon's relationship with Allison had "eroded to the point that [Dixon] feels the relationship is irreparable."

¶7. On April 12, 2018, the Mississippi Department of Human Services (DHS) filed a cross-complaint to modify the February 24, 2005 final judgment, seeking an upward modification of Dixon's child-support obligation. In its cross-complaint, DHS argued that a substantial material change in circumstances had occurred since the final judgment; namely, that Dixon's adjusted gross income "has substantially increased" and "that he is no longer obligated to pay support for the child of a different relationship, who has now reached the age of majority." DHS also asserted that Allison "is now substantially older than she was when the [s]upport [o]rder was entered in February 24, 2005, and the costs of providing for her care have greatly increased." DHS therefore requested that the chancellor modify the previous support order and increase the support obligation to an amount that is in compliance with Mississippi Code Annotated section 43-19-101 (Rev. 2015), Mississippi's statutory guideline for child-support payment.

¶8. The chancellor heard testimony from the parties and arguments from counsel on January 11, 2018, April 23, 2018, July 26, 2018, and December 17, 2018. At the April 23, 2018 hearing, counsel for DHS clarified that DHS, not Olmstead, filed the petition to modify Dixon's child-support obligation. Counsel for DHS asserted that Dixon "had a prior child[-]support obligation. That child is emancipated, so those funds are free. He is no longer under that court order to provide child support for the other child."

¶9. On July 31, 2018, the chancellor entered a temporary visitation order awarding

3

Olmstead physical custody of Allison with Dixon to receive "standard" visitation.[2]  On August 29, 2018, Dixon filed a "complaint for citation of contempt" against Olmstead, claiming that since the entry of the July 31, 2018 judgment, Olmstead refused to comply with the visitation schedule.  Dixon asserted that in so doing, Olmstead "acted willfully, contumaciously[,] and with contempt to withhold the minor child for visitation with her Father."  Dixon requested that the chancellor sanction and incarcerate Olmstead.  Dixon specifically requested that Olmstead be responsible for payment of Dixon's travel expenses, including but not limited to mileage, fuel expenses, costs, and attorney's fees associated with bringing forth the complaint for contempt.

¶10.    At the December 17, 2018 hearing, DHS set forth its argument regarding its request for an increase in Dixon's child-support obligation.  Pursuant to section 43-19-101(1), Dixon must pay fourteen percent of his adjusted gross income in child support to Allison.  DHS asserted that based on Dixon's current income and the information provided by Ingalls Shipyard, Dixon's employer, fourteen percent of Dixon's adjusted gross income would be $491.  The chancellor then stated that he would "set the child support at $400 a month," explaining "I think that's fair for a child. . . . as a matter of fact, that's probably . . . pretty doggone low to feed, clothe, and take care of a child."  The chancellor ruled that the parties "can split all medicals and costs of that nature."  Later during the hearing, the chancellor clarified that he would set the child-support award at the statutory amount of $491.

_____

[2] On appeal, Dixon does not raise any assignments of error regarding the chancellor's visitation award.  Therefore, in order to avoid confusion, we will keep our recitation of the facts focused on the child-support modification and contempt award.

4

¶11.   As to the petition for contempt, Dixon's counsel requested that the chancellor award Dixon attorney's fees in the amount of $2,500 plus mileage of a 132-miles round trip at the rate set by the Internal Revenue Service (IRS).  Dixon's counsel stated that Dixon had made this round trip drive approximately eight times.  The chancellor asked Dixon's counsel for the specific mileage amount he was requesting, and Dixon's counsel responded "1,056 miles" at the IRS rate of "$.54 [or] $.55."  Dixon's counsel calculated the dollar amount as $580.  The chancellor therefore ordered Olmstead to pay Dixon $580 within thirty days.  The chancellor also ordered Olmstead to pay Dixon $1,000 in attorney's fees.

¶12.   On December 17, 2018, the chancellor memorialized his findings in an order.  The chancellor awarded Olmstead physical custody of Allison and set forth a standard visitation schedule for Dixon.  The chancellor amended Dixon's child-support obligation and increased the monthly amount to $491 per month.  The chancellor also found Olmstead "in willful and contumacious contempt" of the chancellor's prior order and accordingly ordered Olmstead to pay Dixon attorney's fees in the amount of $1,000 and mileage expenses in the amount of $580.

¶13.   Dixon timely filed his notice of appeal from the December 17, 2018 judgment "and all other orders and judgments entered in this cause of action."

**STANDARD OF REVIEW**

¶14.   Olmstead did not file a brief in response to Dixon's appeal.  The certificate of service on Dixon's notice of appeal and the certificate of service on his appellate brief reflect that Dixon served Olmstead with a copy of the notice of appeal and a copy of his appellate brief.

5

DHS filed a brief in response to Dixon's appeal; however, in its brief, DHS clarified that counsel for DHS does not represent Olmstead. DHS explained that pursuant to Mississippi Code Annotated section 43-19-35(3) (Rev. 2015):

> Any attorney authorized by the [S]tate to initiate any action pursuant to Title IV-D of the federal Social Security Act, including, but not limited to, any action initiated pursuant to Sections 43-19-31 et seq. and 93-25-1 et seq. shall be deemed to represent the interest of the State Department of Human Services exclusively; no attorney-client relationship shall exist between said attorney and any recipient of services pursuant to Title IV-D of the federal Social Security Act for and on behalf of a child or children . . . .

¶15. Furthermore, we recognize that section 43-19-35(3) specifically provides that "[the] attorney representing the [S]tate in a [T]itle IV-D case is only authorized to appear and prosecute and/or defend issues of support and cannot in a Title IV-D case address or provide representation to the Title IV-D recipient on any other ancillary issues raised or presented in that action." Counsel for DHS states in its appellate brief that Olmstead is a recipient of services under Title IV-D of the Social Security Act. Therefore, pursuant to section 43-19-35(3), counsel for DHS is authorized to initiate the child-support modification action on Olmstead's behalf. However, counsel for DHS cannot represent Olmstead on the contempt issue raised on appeal.

¶16. This Court has held that "[u]sually, 'failure of an appellee to file a brief is tantamount to confession of error and will be accepted as such.'" *Taylor v. Timmons (In re C.T.)*, 228 So. 3d 311, 315 (¶5) (Miss. Ct. App. 2017) (quoting *Rogillio v. Rogillio*, 101 So. 3d 150, 153 (¶12) (Miss. 2012)). "However, . . . when matters on appeal touch the welfare of a minor child, then regardless of whether a party filed a brief, this Court will reach the merits of the

issues in this appeal, though we proceed unaided by a brief from the appellee." *Id*. (internal quotation marks omitted) (quoting *Self v. Lewis*, 64 So. 3d 578, 584 (¶28) (Miss. Ct. App. 2011)); *see also Barber v. Barber*, 608 So. 2d 1338, 1340 (Miss. 1992) ("In matters of child custody and support, however, in the absence of an appellee's brief, our practice is to make a special effort to review the record for support for affirmance.").

**DISCUSSION**

**I.     Modification of Child-Support Obligation**

¶17.    Dixon argues that the record contains no evidence to support the chancellor's upward modification of his child-support obligation; as a result, the chancellor erred in ordering the modification. Dixon claims that DHS failed to attach any documentation or evidence to its cross-complaint or present any testimony or evidence at the hearing in support of its allegation that a material change in circumstance had occurred. Dixon further maintains that DHS failed to provide any testimony or evidence at the hearing in support of its position that his child-support obligation should be modified in an upward manner.

¶18.    This Court has recognized that in child-support matters, a chancellor is afforded considerable discretion, and we will not reverse his findings "unless he was manifestly in error or abused his discretion." *Bowen v. Bowen*, 107 So. 3d 166, 170 (¶14) (Miss. Ct. App. 2012). "[T]he process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." *Clausel v. Clausel*, 714 So. 2d 265, 266-67 (¶6) (Miss. 1998).

¶19.    "A chancellor may modify a child-support award if there has been a substantial or

material change in the circumstances of one or more of the interested parties . . . ." *In re C.T.*, 228 So. 3d at 316 (¶12) (internal quotation marks omitted). The child support calculation guidelines set forth in section 43-19-101(1) establish that a child-support award for one child "should be fourteen percent of the noncustodial parent's adjusted gross income." *Id.* Section 43-19-101(3) provides the method of calculating the adjusted gross income. Miss. Code Ann. § 43-19-101(3). We recognize that a rebuttable presumption exists that the amount set forth in the statutory guideline "is correct both in determining the amount of the initial award and in modifying that award." *In re C.T.*, 228 So. 3d at 316 (¶12).

¶20. However, DHS argues that in cases like the one before us, where the party seeking the modification of the child-support order is not a private individual, but rather a state agency specifically authorized to litigate child-support issues, the state agency is specifically exempted by federal and state statutes from the requirement of proving a material change in circumstances in order to secure the modification of a child-support obligation.

¶21. In its cross-complaint seeking to modify the February 24, 2005 final judgment, DHS asserted that Olmstead is a recipient of services under Title IV-D of the Social Security Act and that therefore DHS is authorized to bring the child-support modification action pursuant to Mississippi Code Annotated section 43-19-31 (Rev. 2015). Section 43-19-31(d) provides that DHS "shall seek to recover from the individual who owes a support obligation to any individual who is a recipient of Title IV-D services . . . on whose behalf the department is providing services, upon judicial proceedings conducted thereon after advance notice to such

8

obligor[.]"

¶22. Additionally, Mississippi Code Annotated section 43-19-34(3) (Rev. 2015) provides that every three years, DHS

> shall notify both parents of their right to request a review, and upon the request of either parent, . . . the department, after a review and determination of appropriateness, or either parent may seek an adjustment to a support order being enforced under [s]ection 43-19-31 in accordance with the guidelines established under [s]ection 43-19-101, if the amount of the child[-]support award under the order differs from the amount that would be awarded in accordance with the guidelines, taking into account the best interests of the child involved.

Section 43-19-34(3) further states that "[n]o proof of a material change in circumstances is necessary in the three-year review for adjustment under this subsection (3)." However, "[p]roof of a material change in circumstances is necessary for modification outside the three-year cycle." *Id*.

¶23. At the hearing held on January 11, 2018, Olmstead informed the chancellor that she had requested a modification in child support because no modification had occurred since the original February 14, 2005 final judgment. Olmstead testified that she had previously requested modifications to increase Dixon's child-support obligation, but DHS informed Olmstead that she could not receive an increase in child support because Dixon was also paying child support for another child. According to Olmstead, now that Dixon was no longer paying child support for his older child, DHS was "going to do a modification." The chancellor then inquired as to DHS's position as to the modification, and counsel for DHS stated: "[W]hat the mother says about the other child getting ready to emancipate so that Mr. Dixon is no longer required to support that child and his child[-]support obligation will be

9

subject to an upward modification for this child is correct."

¶24. After the hearing, the chancellor ultimately modified Dixon's child-support obligation to $491 per month, which is the amount that DHS testified constituted fourteen percent of Dixon's adjusted gross income. This modification is memorialized in the December 17, 2018 final judgment.

¶25. However, Dixon argues that no evidence in the record exists to support the chancellor's modification. As to Dixon's argument that DHS failed to attach any documentation or evidence to its cross-complaint or provide any testimony or evidence at the hearing regarding Dixon's current income or adjusted gross income, we agree that no such exhibits or testimony exist in the record. Our review of the record further reveals no mention of the amount of Dixon's current salary or adjusted gross income, and the only exhibit admitted into evidence during any of the hearings was the guardian ad litem's report.

¶26. The record reflects that counsel for DHS stated in the cross-complaint and at the hearing that Dixon's adjusted gross income had increased and that he was no longer paying child support for his older child.[3] DHS also asserted that Allison "is now substantially older than she was when the [s]upport [o]rder was entered in February 24, 2005, and the costs of providing for her care have greatly increased." DHS therefore argued that Dixon's child-support obligation needed to be upwardly modified in order to reflect the statutory amount set forth under section 43-19-101(1), which DHS submitted is $491.

---

[3] Section 43-19-101(3)(c) provides that "[i]f the absent parent is subject to an existing court order for another child or children, subtract the amount of that court-ordered support" from the absent parent's adjusted gross income.

10

¶27. In its appellate brief, DHS does not dispute that the record in this case contains no testimony or evidence setting forth the amount of Dixon's current salary or his adjusted gross income. However, DHS asserts that the chancellor was within his discretion to modify the child-support obligation because the chancellor had the following information before him:

> (1) the undisputed fact that [Dixon's] child[-]support obligation for [Allison] had never been modified in the thirteen . . . years since it went into effect[;] (2) . . . the admitted fact that [Dixon] had been employed by the same company, Ingalls Shipbuilding, for twenty . . . years, from which the court could infer [that] he had enjoyed increases in income from time to time during the period since 2005 when the child[-]support order was initially entered[;] . . . (3) . . . [Dixon] was no longer laboring under a court ordered child[-]support obligation for his other child[;] (4) . . . [the chancellor's] own common sense, life experience, and knowledge to draw on in making the determination to increase Dixon's child[-]support obligation from $334 per month to $491 per month, a mere increase of $157 per month, an increase that the [c]hancellor felt was fair in the circumstances, even though he opined that the new child[-]support obligation was low in comparison to what it costs to feed, clothe, and take care of a child.

¶28. We find that the Mississippi Supreme Court's opinion in *Clausel* provides relevant guidance to the issue before us; namely, the lack of specific findings or evidence as to Dixon's income in the chancellor's judgment. In that case, the supreme court found that in the chancellor's judgment awarding child support in an amount greater than that recommended by the statutory guidelines, "the chancellor made no specific finding with respect to [the father's] income." *Clausel*, 714 So. 2d at 267 (¶9). The supreme court explained that "[f]or this [c]ourt to affirm the award it would have to deal in pure speculation to undergird the chancellor's finding." *Id*. The supreme court ultimately held that "because the chancellor did not relate in [his] decree or otherwise give proof of [the father's] financial ability to pay the child[-]support award, the judgment should be reversed and remanded for

11

further findings as to [the father's] income and expenses." *Id*. at (¶8). The supreme court advised that "[i]f the chancellor would make more on the record findings as to why he decide[d] an issue or fact a certain way it would greatly decrease the chances of reversal of the decision by this [c]ourt." *Id*. (quoting *Dufour v. Dufour*, 631 So. 2d 192, 195 (Miss. 1994)).

¶29. After our review, we find that pursuant to section 43-19-34(3), DHS did not have to prove a material change in circumstances in order for the chancellor to modify Dixon's child-support obligation. However, there is no actual evidence in the record as to the dollar amount of Dixon's income or his adjusted gross income, to support the amount of the modified child-support obligation. Although we find that the chancellor had sufficient information before him to support the modification of Dixon's child-support obligation, we must reverse and remand this matter to the chancellor for the introduction of additional evidence as to Dixon's income for the purposes of supporting the modified amount.

## II. Contempt Award

¶30. Dixon asserts that per the final judgment, the chancellor found Olmstead to be in willful, contumacious contempt. At the hearing on Dixon's petition for contempt, Dixon requested that the chancellor order Olmstead to pay him attorney's fees in the amount of $2,500. Dixon argues that the chancellor erred when he awarded Dixon only $1,000 in attorney's fees.

¶31. As stated, Olmstead did not file a brief in response to Dixon's appeal. In its appellate brief, DHS explained that pursuant to section 43-19-35(3), counsel for DHS is specifically

12

prohibited from representing Olmstead on the contempt issue.

¶32. We recognize that determining "[w]hether a party is in contempt is a question of fact to be decided on a case-by-case basis." *Voss v. Doughty*, 242 So. 3d 952, 958-59 (¶25) (Miss. Ct. App. 2018). When deciding contempt matters, a chancellor is afforded "substantial discretion . . . because of the chancellor's 'temporal and visual proximity' to the litigants." *Id*. at 959 (¶25). We will not reverse a chancellor's finding in a contempt matter "where the chancellor's findings are supported by substantial credible evidence." *In re C.T.*, 228 So. 3d at 318 (¶17).

¶33. This Court has held that "[w]hen a party is held in contempt for violating a valid judgment of the court, attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Heisinger v. Riley*, 243 So. 3d 248, 259 (¶45) (Miss. Ct. App. 2018); *see also McDonald v. McDonald*, 850 So. 2d 1182, 1192 (¶40) (Miss. Ct. App. 2002) ("Awarding costs and attorney[']s fees because a contemptuous party has necessitated the holding of a hearing to enforce a prior order of the court is appropriate."). This Court then clarified that "[f]ees awarded on this basis, though, should not exceed the expense incurred as a result of the contemptuous conduct[,]" and explained that "fees incurred litigating other matters—such as custody modification or child support—are not recoverable based on the contempt." *Heisinger*, 243 So. 3d at 259 (¶45).

¶34. We further recognize that

> [a]lthough chancellors are instructed to apply the factors in *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982), when granting or denying attorney's fees, this Court has held that establishment of the *McKee* factors is not necessary for a contemnee to recover attorney's fees where the contemnor has willfully

13

violated a lawful court order.

*Vincent v. Rickman*, 167 So. 3d 245, 251 (¶22) (Miss. Ct. App. 2015) (internal quotation marks omitted). Additionally, "[a] specific finding of inability to pay is not required when attorney's fees are assessed against a party found to be in contempt." *Id*. "However, the ultimate award of attorney's fees must still be within reason." *Id*.

¶35. In cases where the chancellor has found a party in willful contempt of court orders, this Court has found that "the record sufficiently supports the chancellor's award of attorney's fees to [the moving party]." *Id.* at 252 (¶24); *see also Chester v. Labasse (In re Estate of Labasse)*, 242 So. 3d 167, 175 (¶30) (Miss. Ct. App. 2017) ("Because the record indeed reflects that Wendy failed to comply with the chancellor's prior order, we find sufficient evidence to support the chancellor's award of attorney's fees related to Ruby's action for contempt."); *Price v. Price*, 5 So. 3d 1151, 1158 (¶19) (Miss. Ct. App. 2009) ("[T]here is no question that Alan willfully violated the court's order . . . . Therefore, we find that the chancellor properly awarded attorney's fees to [the moving party,] Jennifer[.]").

¶36. In the present case, the chancellor found Olmstead in willful contempt of the child custody and visitation order. We find that the chancellor therefore properly awarded attorney's fees to Dixon. However, Dixon maintains that the chancellor should have awarded him $2,500 in attorney's fees, the specific amount Dixon requested at the hearing on the contempt petition, instead of just $1,000. The record reflects that other than his counsel's testimony at the hearing, Dixon provided no evidence in support of the amount of attorney's fees that he incurred. We further find that on appeal, Dixon provided no evidence to support

14

his assertion that the award of attorney's fees was insufficient or unreasonable. *See generally Vincent*, 167 So. 3d at 251-52 (¶¶22-24).

¶37.     However, this Court has upheld awards of attorney's fees in contempt actions even where "there was no specific evidence regarding the attorney's fees that [the moving party] incurred related to . . . [the] contempt[.]" *McAdams v. McAdams*, 261 So. 3d 157, 165 (¶29) (Miss. Ct. App. 2018).  In *Heisinger*, 243 So. 3d at 260 (¶47), "the only evidence to support [the father's] request for attorney's fees was his own testimony that he had incurred more than $35,000 in fees."  This Court nevertheless held that even "[w]ith no specific evidence as to the amount of fees that [the father] incurred because of [the mother's] contempt, the chancellor did not abuse his discretion by awarding attorney's fees of $1,950."  *Id*. (citing Miss. Code Ann. § 9-1-41 (Rev. 2014)).

¶38.     Therefore, given the substantial discretion of the chancellor in contempt matters, we decline to disturb the chancellor's award of $1,000 in attorney's fees.  We therefore affirm the chancellor's award of attorney's fees to Dixon in the contempt action.

¶39.     **AFFIRMED IN PART; REVERSED IN REMANDED IN PART.**

        **BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**